| PROB 22 (Rev. 2/88) | **TRANSFER OF JURISDICTION** | DOCKET NUMBER *(Tran. Court)* 11CR01072-10(DC) |
| | | DOCKET NUMBER *(Rec. Court)* **19-20054-TP-COOKE** |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE: Roberto Tacher | DISTRICT SOUTHERN DISTRICT OF NEW YORK |
| | NAME OF SENTENCING JUDGE Denise Cote, Senior U.S. District Judge |

**FILED BY** ___ **YR** ___ **D.C.**

**Aug 19, 2019**

**ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami**

| DATES OF PROBATION/SUPERVISED RELEASE: | FROM October 25, 2016 | TO October 24, 2019 |

| OFFENSE  ATTEMPT AND CONSPIRACY TO COMMIT FRAUD. | USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: |
| **PART 1 - ORDER TRANSFERRING JURISDICTION** | DATE FILED: 8 7 2019 |

UNITED STATES DISTRICT COURT FOR THE "SOUTHERN DISTRICT OF NEW YORK"

IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the Southern District of Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

August 7, 2019
*Date*

*United States District Judge*

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

August 12, 2019
*Effective Date*

*United States District Judge*

ᴬO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

SOUTHERN                         District of                         NEW YORK

UNITED STATES OF AMERICA            **JUDGMENT IN A CRIMINAL CASE**
V.
ROBERTO TACHER

|  |  |
|---|---|
| Case Number: | 1:S2 11CR01072-10(DLC) |
| USM Number: | 00313-104 |

Frank J. Gaviria            AUSA: Jason Masimore
Defendant's Attorney

**THE DEFENDANT:**

x pleaded guilty to count(s)    2

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 371 | Conspiracy to Engage in the Unlawful Wholesale Distribution of Prescription Drugs | 07/31/2012 | 1 |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

| | | | | | |
|---|---|---|---|---|---|
| x Count(s) | 1 of S2 11 Cr. 1072 | x is | ☐ | are | dismissed on the motion of the United States. |
| x Underlying | S1 11 Cr 1072 | x is | | are | dismissed on the motion of the United States. |
| X Motion(s) | | ☐ is | x | are | denied as moot. |

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 17, 2014
Date of Imposition of Judgment

Signature of Judge
Denise Cote, U.S. District Judge
Name and Title of Judge

_January 22, 2014_
Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case      Case 1:11-cr-0 ─ .2-DLC   Document 810    Filed 01/23/14   Page 2 of 6
Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT:    ROBERTO TACHER | Judgment — Page   2   of   6 |
| CASE NUMBER:  1:S2 11CR01072-10(DLC) | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    37 months.

x    The court makes the following recommendations to the Bureau of Prisons:
     That the defendant be designated to a facility as close to Florida as possible.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐  as notified by the United States Marshal.

X   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    x   before 2 p.m. on    2/28/2014 _____ .

    ☐  as notified by the United States Marshal.

    X   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:



Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

                                   _____
                                      UNITED STATES MARSHAL

                    By _____
                               DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 06/05) Judgment in a Criminal Case   Case 1:11-cr-01072-DLC   Document 810   Filed 01/23/14   Page 3 of 6
Sheet 3 — Supervised Release

| | | Judgment—Page | 3 | of | 6 |

DEFENDANT:       ROBERTO TACHER
CASE NUMBER:     1:S2 11CR01072-10(DLC)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     **3 years.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

x   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   (Rev. 06/05) Judgment in a Criminal Case Case 2-DLC   Document 810   Filed 01/23/14   Page 4 of 6
Sheet 3A — Supervised Release

| | | Judgment—Page | 4 | of | 6 |

DEFENDANT:        ROBERTO TACHER
CASE NUMBER:   1:S2 11CR01072-10(DLC)

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall pay restitution in the amount of $212,000 to the New York State Department of Health. Payments shall be made to the Clerk, U.S. District Court, Attn: Cashier's Office, for disbursement to the victim identified on page 5.   Restitution shall  be made according to the schedule set forth on page 6. Restitution is imposed joint and several with any co-conspirators.

The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant must seek and maintain full-time employment.

The defendant shall comply with immigration laws and cooperate with the Department of Homeland Security, Bureau of Citizenship and Immigration Services (BCIS).

The defendant is to provide the Probation Department access to any and all requested financial information.

The defendant must not incur any new credit card charges or open any new credit line without approval of Probation.

The defendant shall notify the U.S. Attorney's Office for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

The defendant shall be supervised by the district of residence.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:        **ROBERTO TACHER**
CASE NUMBER:      1:S2 11CR01072-10(DLC)
                  **CRIMINAL MONETARY PENALTIES**

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $0 | $ 212,000.00 |

☐  The determination of restitution is deferred _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| NYS Department of Health | $212,000.00 | $212,000.00 | |
| Fiscal Management Group | | | |
| Corning Tower, Room 2737 | | | |
| Empire State Plaza | | | |
| Albany, NY 12237 | | | |
| Attn: Dennis Wendell | | | |
| Chief Accountant | | | |

| TOTALS | $ | $212,000.00 | $ | $212,000.00 |
|---|---|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for    ☐ fine   ☐ restitution.

    ☐  the interest requirement for    ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | |
|---|---|
| DEFENDANT: ROBERTO TACHER | Judgment — Page ___6___ of ___6___ |
| CASE NUMBER: 1:S2 11CR01072-10(DLC) | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☒  Lump sum payment of $ __100.00__ due immediately, balance due

    ☐  not later than _____ , or

    ☐  in accordance   ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of _____ (e.g., months or years), to _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time;

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Restitution payment shall begin while the defendant is in prison. If the defendant is engaged in a non-UNICOR work program, the defendant shall pay $25 per quarter toward restitution. However, if the defendant participates in the UNICOR program as a grade 1 though 4, he shall pay 50% of his monthly UNICOR earnings. Following release from imprisonment the defendant shall pay 10% of his gross monthly income toward the payment of restitution.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several and corresponding payee, if appropriate.

Juan Carlos Viera, Jose Manuel Dominguez, Eduardo Diaz, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Cataline Tavarez, Edwin M. Tavarez, Carlos Alberto Padron, Israel Tacher, Vanessa Rosario, Eligio Armas, Carlos Peralta, Joselito Peralta, Juan Carlos Pernita, Haaser Olivo Liranzo, Kelvin Manuel Martinez Tavereas, Glenn Luis Cabrera, Fary R. Cabn Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramos Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Cayetano Paulino, Armando Garcia, Sergio Novo, Lazaro Ospina, Alex Oria, Kenneth Nelson, Conrado Vazquez, Abel Gonzalez, Efren Ruis, Felipe Wated, and Joe H. Nelson, under 11 Cr. 1072 (DLC).

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May __, 2013

By E-mail

Frank Gaviria, Esq.
175 Southwest 7th street
Suite 2009
Miami, FL 33130

  Re: United States v. Roberto Tacher, S2 11 Cr. 1072 (DLC)

Dear Mr. Gaviria:

  On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Roberto Tacher ("the defendant") to Count One of the above-referenced Superseding Indictment (the "Superseding Indictment"). Count One charges the defendant with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349, and carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of 3 years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

  In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for conspiring to commit mail fraud through the unlawful purchase, sale and mailing of prescription drugs from in or about 2005 through in or about July 2012, as charged in Count One of the Superseding Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq. In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

  The defendant hereby admits the forfeiture allegation with respect to Count One of the Superseding Indictment and agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the

1

commission of such offense, and all property constituting, or derived from, proceeds traceable to such offense (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

The defendant further agrees to make restitution in the amount of $212,000 to Medicaid, in accordance with 18 U.S.C. §3663(a)(3), and that the obligation to make such restitution shall be made a condition of probation, see 18 U.S.C. §3563(b)(2), or of supervised release, see 18 U.S.C. §3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. Pursuant to U.S.S.G. § 2B1.1, the base offense level is 7.

2. Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), because the amount of loss was more than $400,000 but less than $1,000,000, the offense level is increased by 14 levels.

3. Pursuant to U.S.S.G. § 2B1.1(b)(14)(A), because the offense involved the conscious or reckless risk of death or serious bodily injury, the offense level is increased by 2 levels.

4. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 20.

B. Criminal History Category

Based upon the information now known to this Office (including representations by the defense), the defendant has no criminal history points. Accordingly, the defendant's Criminal History Category is I.

C. Sentencing Range

Based upon the calculations set forth above and pursuant to U.S.S.G. § 5G1.1(c)(1), the defendant's stipulated Guidelines range is 33 to 41 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 20, the applicable fine range is $7,500 to $75,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court sua sponte consider any such departure or adjustment.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court sua sponte consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, see U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated

Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 33 to 41 months' imprisonment; and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $7,500, and the Government agrees not to appeal any fine that is greater than or equal to $75,000. The defendant also agrees not to appeal any order of restitution that is less than or equal to $212,000, and the Government agrees not to appeal any order of restitution that is greater than or equal to $212,000.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the

4

commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney


By: _____
    Jason A. Masimore
    Russell Capone
    Edward B. Diskant
    Assistant United States Attorneys
    (212) 637-2580/2247/2294

    APPROVED:


    _____
    Karl N. Metzner
    Chief, Organized Crime Unit


AGREED AND CONSENTED TO:


_____    _____
Roberto Tacher    DATE


APPROVED:


_____    _____
Frank Gaviria, Esq.    DATE
Attorney for Roberto Racher

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                     :
UNITED STATES OF AMERICA             :    SUPERSEDING
                                     :    INDICTMENT
        -v-                          :
                                     :    S2 11 Cr. 1072 (DLC)
JUAN CARLOS VIERA,                   :
   a/k/a "Gordo,"                    :
   a/k/a "Jon Jon,"                  :
JOSE MANUEL DOMINGUEZ,               :
   a/k/a "Flaco,"                    :
JULIO DOMINGUEZ,                     :
CARLOS ALBERTO PADRON,               :
   a/k/a "Lindo,"                    :
   a/k/a "Carlos Alberto Padron Pena,"  :
JUAN MANUEL TAVAREZ PADILLA,         :
JUAN TAVAREZ,                        :
   a/k/a "Patron,"                   :
   a/k/a "Jefe,"                     :
   a/k/a "Nene,"                     :
AURA CATALINA TAVAREZ,               :
   a/k/a "La Patrona,"               :
   a/k/a "Jefa,"                     :
EDWIN M. TAVAREZ,                    :
   a/k/a "Junior,"                   :
   a/k/a "Chepe,"                    :
ISRAEL TACHER,                       :
   a/k/a "Capi,"                     :
   a/k/a "El Judio,"                 :
ROBERTO TACHER,                      :
   a/k/a "Robertico,"                :
VANESSA ROSARIO,                     :
ELIGIO ARMAS,                        :
EDUARDO DIAZ,                        :
CARLOS PERALTA,                      :
   a/k/a "Platano,"                  :
   a/k/a "Chino,"                    :
JOSELITO PERALTA,                    :
   a/k/a "Piki,"                     :
JUAN CARLOS PERALTA,                 :
HANSER OLIVO LIRANZO,                :
KELVIN MANUEL MARTINEZ TAVERAS,      :
GLENN LUIS CABRERA,                  :
   a/k/a "Luigi,"                    :
FARY R. CABA PADILLA,                :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 14 2012

```
MIGUEL PADILLA,                          :
AMERICO LUIS GARCIA DOMINGUEZ,           :
WILFRED RODRIGUEZ,                       :
   a/k/a "Wilson,"                       :
JOSE RAMON GONZALEZ,                     :
   a/k/a "Chamon,"                       :
ALEX JUSTO,                              :
YOEL FERNANDEZ RIVERO,                   :
   a/k/a "Mango,"                        :
AMAURIS A. ROSARIO,                      :
   a/k/a "Maro,"                         :
   a/k/a "Mauro,"                        :
JACQUELINE JIMENEZ,                      :
   a/k/a "Morena,"                       :
LUIS SANTANA,                            :
BAYOHAN DIAZ,                            :
   a/k/a "Bayo,"                         :
CAYETANO PAULINO,                        :
ARMANDO GARCIA,                          :
SERGIO NOVO,                             :
LAZARO OSPINA,                           :
BRENDA SANTOS,                           :
IRA KARP,                                :
LUIS ABREU,                              :
JOEL GABRIEL CASADO,                     :
   a/k/a "Joel Casado Castillo,"         :
JOSE FELIPE,                             :
   a/k/a "Gino,"                         :
BENITO DURAN,                            :
   a/k/a "Beano,"                        :
ARELIS LEE,                              :
MILAGROS ACEVEDO,                        :
ALEX ORIA,                               :
JOE H. NELSON,                           :
KENNETH NELSON,                          :
CONRADO VAZQUEZ,                         :
ABEL GONZALEZ,                           :
   a/k/a "Abelito," and                  :
EFREN RUIZ,                              :
   a/k/a "Socio,"                        :
                                         :
                    Defendants.          :
                                         :
- - - - - - - - - - - - - - - - - - - X
```

2

## COUNT ONE

### (Conspiracy to Commit Wire Fraud, Mail Fraud and Health Care Fraud)

The Grand Jury charges:

### THE SCHEME TO DEFRAUD

1.   This scheme involves the unlawful diversion and trafficking of hundreds of millions of dollars' worth of prescription drugs that previously had been dispensed to Medicaid recipients in the New York City area ("second-hand" drugs) in a national, underground market.  The prescription drugs involved in this scheme are not drugs of abuse, but rather are drugs designed to treat various illnesses, including, for example, HIV, schizophrenia, and asthma.  These second-hand drugs are originally dispensed to Medicaid recipients in the New York City area who then sell the second-hand drugs into collection and distribution channels that ultimately end at pharmacies for resale to unsuspecting consumers.  Through the methods described herein, the defendants and their co-conspirators profit by exploiting the difference between the cost to the patient of obtaining bottles of prescription drugs through Medicaid - which typically is zero - and the hundreds of dollars per bottle that pharmacies pay to purchase those drugs to distribute to their customers.  To reap maximum profits, the defendants and their co-conspirators target the most expensive

3

drugs, including, but not limited to, the following drugs (with the corresponding approximate Medicaid reimbursement values per bottle): Atripla ($1,635/bottle); Trizivir ($1,347/bottle); Zyprexa ($1,015/bottle); Truvada ($1,080/bottle); Prezista ($968/bottle); Reyataz ($947/bottle); Isentress ($940/bottle); Intelence ($770/bottle); Kaletra ($704/bottle); and Sustiva ($555/bottle).

2.   To effectuate the fraudulent scheme, the lowest level participants in the scheme (the "Medicaid Beneficiaries") fill prescriptions for month-long supplies of drugs at pharmacies throughout the New York City area, using Medicaid benefits to pay the cost. The Medicaid Beneficiaries are typically AIDS patients or individuals who suffer from other illnesses and who sell their medications for cash rather than use them for treatment. Medicaid Beneficiaries sell their bottles of drugs to other participants in the scheme ("Collectors") at locations like street corners and bodegas in and around New York City, including in the Washington Heights neighborhood of Manhattan and in the Bronx. Collectors sell the second-hand bottles they collect to other participants in the scheme ("Aggregators"), who typically buy large quantities of second-hand drugs from multiple Collectors. Aggregators sell the second-hand drugs to other Aggregators higher up the chain, who typically buy large amounts from multiple Aggregators. Eventually, the second-hand

4

drugs make their way to the highest-level Aggregators involved in the scheme, who sell the second-hand drugs into distribution channels ultimately leading to pharmacies to be dispensed to unsuspecting consumers.

3.   These distribution channels involve individuals in Texas, Florida, Nevada, Utah, Alabama, and elsewhere, who control wholesale prescription drug distribution companies ("Corrupt Distribution Companies"), which sell the second-hand drugs to pharmacies and other wholesale prescription drug distribution companies in New York, New Jersey, Massachusetts, Pennsylvania, Illinois, South Carolina, Mississippi, Arizona, Kentucky, Minnesota, Washington, Hawaii, Puerto Rico, and elsewhere.  The Corrupt Distribution Companies are designed to conceal the fact that the drugs being sold to the pharmacies are second-hand drugs.

4.   Pharmacies originally dispense the drugs to Medicaid Beneficiaries in original, sealed, manufacturers' bottles.  Each bottle comes from the manufacturer bearing a label (the "manufacturer's label") that indicates, among other things, the identity of the manufacturer; the brand of drug; the strength of drug; the required storage conditions (such as temperature); the lot number tracking the actual tablets, pills or capsules contained in the bottle back to the place, date and time of their manufacture; and the expiration date of the drugs.  Prior

to dispensing each bottle, pharmacies affix to the bottle, on
top of the manufacturer's label, a separate, adhesive label
("patient label") that includes additional information, such as
the name and address of the pharmacy, the name of the patient,
information indicating that the drug was obtained through
Medicaid, and dosage instructions.  After purchasing the second-
hand bottles originally dispensed to Medicaid Beneficiaries,
Collectors and Aggregators use lighter fluid and other
potentially hazardous chemicals to dissolve the adhesive on the
patient labels, and remove the patient labels and all traces of
the adhesive from the bottles.  Through this process, the
Collectors and Aggregators make the bottles appear new for the
purpose of concealing the fact that they have already been
dispensed, so that they eventually can be re-sold to
unsuspecting consumers.

     5.  Because the prescription drugs involved in the scheme
are not drugs of abuse, the bottles' high value depends on their
appearing to contain new, unexpired drugs that legitimately have
been obtained directly from manufacturers through authorized and
licensed wholesale distributors.  However, during the process of
removing patient labels, the manufacturers' labels sometimes
become damaged such that the bottles no longer appear as if they
are new.  In other instances, the second-hand drugs already have
expired or are close to their expiration dates.  When the

bottles are not re-saleable because of damaged manufacturers' labels or expiration date problems, certain Aggregators replace the original manufacturers' labels with counterfeit labels and/or alter the labels to backdate their expiration dates.  In other instances, Medicaid Beneficiaries, Collectors, and Aggregators remove the drugs from the bottles and traffic in loose pills.  Loose pills are untraceable to particular manufacturers' lot numbers, and their original expiration dates cannot be determined.  Aggregators typically store their inventories of loose pills in plastic bags until they can re-sell them into distribution channels that lead to unscrupulous pharmacists who buy them at prices below wholesale or Medicaid value to dispense to their customers for additional profit.

6.   The scheme itself is potentially dangerous to the unwitting consumers of second-hand prescription drugs.  As described above, the bottles have been treated with potentially hazardous chemicals, and the drugs themselves may have expired. Additionally, the participants in the scheme store the drugs in uncontrolled conditions, such as car trunks, residences and rented storage facilities, which may not be sufficient to maintain the medical efficacy of such drugs over time.  For example, some HIV medications require constant storage in conditions between 25 and 30 degrees Celsius to maintain their efficacy.  Moreover, in some instances, by the time Aggregators

obtain the bottles of second-hand drugs, some of the bottles contain drugs or doses different from what is indicated on the manufacturers' labels.

7.   This scheme also involves material misrepresentations and omissions both on the front end, when Medicaid Beneficiaries initially obtain prescription drugs, and on the back end, when the second-hand drugs are dispensed to unwitting consumers filling their prescriptions.  On the front end of the scheme, the defendants rely on the fact that the Medicaid Beneficiaries fill their prescriptions for little or no cost for the purpose of selling drugs into the underground market rather than ingesting them to treat their illnesses.  Each Medicaid Beneficiary's Medicaid card contains a disclaimer that "fraudulent use of this card is a punishable offense."   The Medicaid program, which would not have paid such benefits on behalf of the Medicaid Beneficiaries if the Medicaid Beneficiaries had disclosed that they were selling the drugs to others, unwittingly funds the scheme.  On the back end of the scheme, the defendants' purposeful obfuscation of the true source of the second-hand drugs defrauds legitimate consumers who unknowingly have their prescriptions filled with second-hand drugs that have been sold back to pharmacies as part of the scheme.  Legitimate consumers would not knowingly fill their prescriptions with second-hand drugs, and legitimate consumers'

8

insurance companies and other health care benefit programs would not knowingly reimburse pharmacies the cost of second-hand drugs. In this manner, the scheme was designed for Medicaid to be defrauded multiple times, as the same drugs that came from Medicaid Beneficiaries in the first place could be dispensed to Medicaid patients on the back end.

8.    Moreover, the scheme uses Corrupt Distribution Companies to conceal the true source of the second-hand drugs. Federal regulations require that "[b]efore the completion of any wholesale distribution by a wholesale distributor of a prescription drug . . . to another wholesale distributor or retail pharmacy, the seller shall provide to the purchaser a statement identifying each prior sale, purchase, or trade of such drug. This identifying statement shall include . . . the business name and address of all parties to each prior transaction involving the drug, starting with the manufacturer; and . . . the date of each previous transaction." 21 C.F.R. § 203.50(a). Accordingly, a necessary component of the fraudulent scheme is creating false records purporting to trace the second-hand drugs back to the manufacturer through the Corrupt Distribution Companies as if those drugs had not been dispensed previously to Medicaid Beneficiaries and purchased on the street in the New York City area.

9.    To facilitate the scheme, the defendants use commercial interstate carriers to ship the drugs in boxes from the New York City area to other areas of the country, including Florida and Texas.  Various defendants and their co-conspirators place and receive interstate telephone calls to arrange for delivery and receipt of second-hand drugs and cash.  Various defendants and their co-conspirators also engage in international telephone calls, send and receive e-mails, wire cash from state to state and from the United States to other countries, and cause other wire transmissions to be made in furtherance of the scheme.  In addition, the processes used to reimburse pharmacies for the cost of the prescription drugs and otherwise to administer Medicaid and other health benefit programs involve various wire transmissions.

THE DEFENDANTS AND RELEVANT ENTITIES AND INDIVIDUALS

10.    The defendants charged herein played a variety of roles in the scheme.  Some defendants purchased second-hand prescription drugs from high-level Aggregators to sell into distribution channels leading back to unsuspecting consumers, some were high- and mid-level Aggregators who bought and sold large quantities of prescription drugs to and from each other and from Collectors, and some defendants were Collectors.

11.    At various times relevant to the charges in this Indictment, the "SANTANA Organization" was a group of

10

individuals based in New York City and led by LUIS SANTANA, the defendant, who acted as mid-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the PADILLA Organization, as defined below, and others.

12. At various times relevant to the charges in this Indictment, the "PERALTA Organization" was a group of individuals based in New Jersey and led by CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," and his brother, JOSELITO PERALTA, a/k/a "Piki," the defendants, who acted as mid-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the PADILLA Organization and the TACHER Organization, as defined below, and others.

13. At various times relevant to the charges in this Indictment, the "PADILLA Organization" was a group of individuals based in New York and New Jersey and led by JUAN MANUEL TAVAREZ PADILLA, the defendant, who acted as high-level Aggregators of second-hand drugs in the New York City area, and who sold large quantities of second-hand drugs to the DOMINGUEZ/VIERA Organization and the PADRON Organization, as defined below, and others.

14. At various times relevant to the charges in this Indictment, the "TACHER Organization" was a group of individuals

11

based in Florida and led by ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," the defendant, who obtained second-hand drugs from the PERALTA Organization and sold them into distribution channels, including to the ORIA Organization, as defined below.

15.   At various times relevant to the charges in this Indictment, the "DOMINGUEZ/VIERA Organization" was a group of individuals based in Florida and led by JULIO DOMINGUEZ, JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," and JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," the defendants, who obtained second-hand drugs from sources of supply in the New York City area and sold them into distribution channels.

16.   At various times relevant to the charges in this Indictment, the "VAZQUEZ Organization" was a group of individuals led by CONRADO VAZQUEZ, the defendant, who obtained second-hand drugs from sources of supply in the New York City area and sold them to the ORIA Organization, as defined below.

17.   At various times relevant to the charges in this Indictment, the "PADRON Organization" was a group of individuals based in Florida and led by CARLOS ALBERTO PADRON a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," the defendant, and others, who obtained second-hand drugs from sources of supply in the New York City area and sold them into distribution channels.

18.   At various times relevant to the charges in this Indictment, the "ORIA Organization" was a group of individuals

12

based in Texas and led by ALEX ORIA, the defendant, who controlled and operated Corrupt Distribution Companies in Texas and elsewhere. The ORIA Organization purchased second-hand drugs from the TACHER Organization, the VAZQUEZ Organization, ABEL GONZALEZ, the defendant, and others, and sold them to several other Corrupt Distribution Companies, including a Corrupt Distribution Company with offices in Utah and Nevada, which distributed second-hand drugs to pharmacies and other wholesale prescription distribution drug companies in New York, New Jersey, Massachusetts, Pennsylvania, Illinois, South Carolina, Mississippi, Arizona, Kentucky, Minnesota, Washington, Hawaii, Puerto Rico, and elsewhere.

19. At various times relevant to the charges in this Indictment, JULIO DOMINGUEZ, JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," and JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," the defendants, were leaders of the DOMINGUEZ/VIERA Organization and coordinated the purchase of second-hand drugs from the PADILLA Organization and others and the sale of those drugs into distribution channels.

20. At various times relevant to the charges in this Indictment, CARLOS ALBERTO PADRON a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," the defendant, was a leader of the PADRON Organization and coordinated the purchase of second-hand drugs

from the PADILLA Organization and others and the sale of those drugs into distribution channels.

21.   At various times relevant to the charges in this Indictment, ELIGIO ARMAS and EDUARDO DIAZ, the defendants, worked for the DOMINGUEZ/VIERA Organization.   ARMAS coordinated the shipment of second-hand drugs, which the DOMINGUEZ/VIERA Organization purchased from Aggregators, through commercial interstate carriers from the New York City area to other states. DIAZ assisted in buying second-hand drugs from the PADILLA Organization for the DOMINGUEZ/VIERA Organization and making payments to the PADILLA Organization.

22.   At various times relevant to the charges in this Indictment, AMERICO LUIS GARCIA DOMINGUEZ, the defendant, worked for the DOMINGUEZ/VIERA Organization.   AMERICO LUIS GARCIA DOMINGUEZ assisted in obtaining second-hand drugs from, and making payments, to the PADILLA Organization.

23.   At various times relevant to the charges in this Indictment, JUAN MANUEL TAVAREZ PADILLA, the defendant, was the leader of the PADILLA Organization.   PADILLA supervised other members of the PADILLA Organization, sold second-hand drugs to the DOMINGUEZ/VIERA and PADRON Organizations, picked up large amounts of cash from the DOMINGUEZ/VIERA Organization, and used emails to communicate with the PADILLA Organization's customers

14

and to keep track of the PADILLA Organization's operations, inventory, and profits.

24.  At various times relevant to the charges in this Indictment, HANSER OLIVO LIRANZO, the defendant, worked for the PADILLA Organization.  LIRANZO reported directly to JUAN MANUEL TAVAREZ PADILLA, the defendant, and functioned as PADILLA's lieutenant.  LIRANZO also supervised other members of the PADILLA Organization.  LIRANZO coordinated the receipt of second-hand drugs from the PADILLA Organization's suppliers, the payments to those suppliers, the transfer of second-hand drugs to the DOMIGUEZ/VIERA and PADRON Organizations, and the receipt of payment from the DOMINGUEZ/VIERA and PADRON Organizations.

25.  At various times relevant to the charges in this Indictment, KELVIN MANUEL MARTINEZ TAVERAS, the defendant, worked for the PADILLA Organization.  TAVERAS reported to HANSER OLIVO LIRANZO, the defendant, and assisted him in connection with the scheme described above.

26.  At various times relevant to the charges in this Indictment, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"  a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," MIGUEL PADILLA, FARY R. CABA PADILLA, JOSE RAMON GONZALEZ, a/k/a "Chamon," and JACQUELINE JIMENEZ, a/k/a "Morena," the

defendants, were Aggregators who supplied second-hand drugs to the PADILLA Organization.

27.   At various times relevant to the charges in this Indictment, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," and his brother JOSELITO PERALTA, a/k/a "Piki," the defendants, were the leaders of the PERALTA Organization.  CARLOS PERALTA and JOSELITO PERALTA managed other participants in the scheme and sold large amounts of second-hand drugs to the PADILLA Organization, the TACHER Organization, and others.

28.   At various times relevant to the charges in this Indictment, JUAN CARLOS PERALTA and GLENN LUIS CABRERA, a/k/a "Luigi," the defendants, purchased and processed second-hand drugs for the PERALTA Organization and sold those second-hand drugs to the PADILLA Organization and others.

29.   At various times relevant to the charges in this Indictment, WILFRED RODRIGUEZ, a/k/a "Wilson," the defendant, was an Aggregator who supplied second-hand drugs to the PERALTA Organization.

30.   At various times relevant to the charges in this Indictment, ALEX JUSTO and AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," the defendants, were Aggregators who supplied second-hand drugs to the PERALTA Organization and the PADILLA Organization.

16

31.   At various times relevant to the charges in this Indictment, LUIS SANTANA, the defendant, was the leader of the SANTANA Organization.   SANTANA was based in New York City and managed and supervised the members of the SANTANA Organization in the purchase of second-hand drugs and their sale to the PADILLA Organization and others.

32.   At various times relevant to the charges in this Indictment, BAYOHAN DIAZ, a/k/a "Bayo," the defendant, worked for the SANTANA Organization.   DIAZ was SANTANA's lieutenant and ran the SANTANA Organization and reported to SANTANA while SANTANA was traveling to the Dominican Republic.

33.   At various times relevant to the charges in this Indictment, CAYETANO PAULINO, the defendant, supplied second-hand drugs to the SANTANA Organization.

34.   At various times relevant to the charges in this Indictment, YOEL FERNANDEZ RIVERO, a/k/a "Mango," purchased second-hand drugs from the PADILLA Organization to put them into distribution channels.

35.   At various times relevant to the charges in this Indictment, ARMANDO GARCIA, the defendant, purchased second-hand drugs from a co-conspirator not named as a defendant herein ("CC-1") to put them into distribution channels.

36.   At various times relevant to the charges in this Indictment, SERGIO NOVO and LAZARO OSPINA, the defendants,

17

worked together to purchase second-hand drugs from the PERALTA Organization to put them into distribution channels.

37.  At various times relevant to the charges in this Indictment, ISRAEL TACHER a/k/a "Capi," a/k/a "El Judio," and his son, ROBERTO TACHER, a/k/a "Robertico," the defendants, purchased second-hand drugs on behalf of the TACHER Organization from the PERALTA Organization and shipped them from New Jersey to Texas to the ORIA Organization, which distributed the second-hand drugs.

38.  At various times relevant to the charges in this Indictment, ALEX ORIA, the defendant, was the leader of the ORIA Organization.  ORIA managed other participants in the scheme and coordinated the purchase and sale by the ORIA Organization of second-hand prescription drugs.

39.  At various times relevant to the charges in this Indictment, JOE H. NELSON and KENNETH NELSON, the defendants, operated Corrupt Distribution Companies used by the ORIA Organization to purchase and sell second-hand drugs to another Corrupt Distribution Company.

40.  At various times relevant to the charges in this Indictment, CONRADO VAZQUEZ and ABEL GONZALEZ, a/k/a "Abelito," the defendants, purchased second-hand drugs on behalf of the VAZQUEZ Organization and sold them to the ORIA Organization, which distributed the second-hand drugs.

18

41.  At various times relevant to the charges in this Indictment, EFREN RUIZ, a/k/a "Socio," the defendant, working with a co-conspirator not named as a defendant herein ("CC-2"), purchased second-hand drugs and sold them to the ORIA Organization, which distributed the second-hand drugs.

STATUTORY ALLEGATIONS

42.  From at least in or about 2005, up to and including in or about July 2012, in the Southern District of New York and elsewhere, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS

19

SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO
GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON,
KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and
ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known
and unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other to violate
Sections 1341, 1343, and 1347 of Title 18, United States Code.

## Objects of the Conspiracy

### Mail Fraud

43.  It was a part and an object of the conspiracy that
JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL
DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

## Wire Fraud

44.  It was further a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango,"  AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining

money and property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause
to be transmitted by means of wire and radio communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343.

### Health Care Fraud

45. It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango,"  AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known and unknown, willfully and knowingly would and did execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises money owned by and under the custody and control of a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Conspiracy to Commit Adulteration and Misbranding Offenses and the Unlawful Wholesale Distribution of Prescription Drugs)

The Grand Jury further charges:

46.   The allegations contained in paragraphs 1 through 41 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

47.   From at least in or about 2005, up to and including in or about July 2012, in the Southern District of New York and elsewhere, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon,"

JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS
ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron
Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a
"Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ,
a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a
"Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El
Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO,
ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano,"
a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS
PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS,
GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL
PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a
"Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL
FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a
"Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS
SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO
GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON,
KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and
ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known
and unknown, willfully and knowingly did combine, conspire,
confederate, and agree together and with each other to commit
offenses against the United States, to wit, to violate Sections
331(a), 331(b), 331(c), 331(t), 333(a)(2), 333(b)(1)(D), and
353(e)(2)(A) and (B) of Title 21, United States Code.

48. It was a part and an object of the conspiracy that
JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL
DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,
SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH
NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL
GONZALEZ, a/k/a "Abelito," the defendants, and others known and
unknown, willfully and knowingly, and with the intent to defraud
and mislead, would and did introduce and deliver for
introduction into interstate commerce a drug that was

26

adulterated, as that term is defined in Title 21, United States
Code, Section 351(a), in violation of Title 21, United States
Code, Sections 331(a) and 333(a)(2).

49.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,
SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH
NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL
GONZALEZ, a/k/a "Abelito," the defendants, and others known and

27

unknown, willfully and knowingly, and with the intent to defraud and mislead, would and did introduce and deliver for introduction into interstate commerce a drug that was misbranded, as that term is defined in Title 21, United States Code, Sections 352(a) and (i), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

50.  It was a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango,"  AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,

SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH
NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL
GONZALEZ, a/k/a "Abelito," the defendants, and others known and
unknown, willfully and knowingly, and with the intent to defraud
and mislead, would and did adulterate as that term is defined in
Title 21, United States Code, Section 351(a), a drug in
interstate commerce, in violation of Title 21, United States
Code, Sections 331(b) and 333(a)(2).

51.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO
LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,
a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO
LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE
RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,

SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH

NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL

GONZALEZ, a/k/a "Abelito," the defendants, and others known and

unknown, willfully and knowingly, and with the intent to defraud

and mislead, would and did misbrand, as that term is defined in

Title 21, United States Code, Sections 352(a) and (i), a drug in

interstate commerce, in violation of Title 21, United States

Code, Sections 331(b) and 333(a)(2).

52.   It was further a part and an object of the conspiracy

that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE

MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ
RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a
"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,
SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH
NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL
GONZALEZ, a/k/a "Abelito," the defendants, and others known and
unknown, willfully and knowingly, and with the intent to defraud
and mislead, would and did receive in interstate commerce a drug
that was adulterated, as that term is defined in Title 21,
United States Code, Section 351(a), and would and did deliver
and proffer delivery thereof for pay and otherwise, in violation
of Title 21, United States Code, Sections 331(c) and 333(a)(2).

53.  It was further a part and an object of the conspiracy
that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE
MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO
PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN
MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,
a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO
PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,

SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH

NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL

GONZALEZ, a/k/a "Abelito," the defendants, and others known and

unknown, willfully and knowingly, and with the intent to defraud

and mislead, would and did receive in interstate commerce a drug

that was misbranded, as that term is defined in Title 21, United

States Code, Sections 352(a) and (i), and would and did deliver

and proffer delivery thereof for pay and otherwise, in violation

of Title 21, United States Code, Sections 331(c) and 333(a)(2).

54.   It was further a part and an object of the conspiracy

that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE

MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the defendants, and others known and unknown, willfully and knowingly, and with the intent to defraud and mislead, would and did alter, mutilate, destroy, obliterate and remove the whole and any part of the labeling of a drug, and would and did do other acts with respect to a drug while such drug was held for sale, after shipment in interstate commerce and which resulted in such drug being adulterated, as that term is defined in Title 21, United States Code, Section 351(a), in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

55.   It was further a part and an object of the conspiracy that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE

MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,

SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH

NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL

GONZALEZ, a/k/a "Abelito," the defendants, and others known and

unknown, willfully and knowingly, and with the intent to defraud

and mislead, would and did alter, mutilate, destroy, obliterate

and remove the whole and any part of the labeling of a drug, and

would and did do other acts with respect to a drug while such

drug was held for sale, after shipment in interstate commerce

and which resulted in such drug being misbranded, as that term

is defined in Title 21, United States Code, Sections 352(a) and

(i), in violation of Title 21, United States Code, Sections

331(k) and 333(a)(2).

56.   It was further a part and an object of the conspiracy

that JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE

MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO

PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN

MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a

"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"

a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"

ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER,

a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ,

CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO

PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO

LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA,

a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO

LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE

RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ

RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a

"Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA,

BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA,

SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH

NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL

GONZALEZ, a/k/a "Abelito," the defendants, and others known and unknown, willfully and knowingly would and did engage in the wholesale distribution in interstate commerce of prescription drugs subject to Title 21, United States Code, Section 353(b) in a State, at a time when the defendants and their coconspirators were not licensed by that State, in accordance with the guidelines issued under Title 21, United States Code, Section 353(e)(2)(B), in violation of Title 21, United States Code, Sections 331(t), 333(b)(1)(D), and 353(e)(2)(A) and (B).

## Overt Acts

57. In furtherance of the conspiracy and to effect the illegal objects thereof, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED

RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon,"
ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A.
ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a
"Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO
PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA,
JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ,
a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the
defendants, and others known and unknown, committed the
following overt acts, among others, in the Southern District of
New York and elsewhere:

a.   On or about January 24, 2012, JUAN CARLOS VIERA,
a/k/a "Gordo," a/k/a "Jon Jon," the defendant, and a co-
conspirator not named as a defendant herein ("CC-3") engaged in
a telephone conversation.  During the conversation, in substance
and part, VIERA provided a list of second-hand prescription
drugs he wanted to purchase, including the HIV medications
Combivir, Epivir, Norvir, Reyataz, and Kaletra.  VIERA and CC-3
also discussed the quality and cleanliness of the bottles.

b.   On or about December 11, 2011, JOSE MANUEL
DOMINGUEZ, a/k/a "Flaco," and JUAN MANUEL TAVAREZ PADILLA, the
defendants, engaged in a telephone conversation.  During the
conversation, in substance and part, PADILLA listed various
prescription drugs and quantities, including the HIV medications
Atripla, Combivir, Epzicom, Epivir, Kaletra and Norvir, and acid

37

reflux medication Nexium.  DOMINGUEZ told PADILLA, in substance, that he would call PADILLA when they were ready to pick up the drugs.

c.   On or about August 1, 2011, JULIO DOMINGUEZ, the defendant, and CC-1 engaged in a telephone conversation.  During the conversation, in substance and part, CC-1 told DOMINGUEZ that CC-1 had prescription drugs available.  DOMINGUEZ told CC-1 that the expiration dates for the drugs must be at least 14 or 15 months from then.

d.   On or about October 19, 2011, in New Jersey, JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," and AMERICO LUIS GARCIA DOMINGUEZ, the defendants, met with HANSER OLIVO LIRANZO, the defendant, about prescription drug trafficking.

e.   On or about November 12, 2011, in Miami, Florida, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto Padron Pena," the defendant, met with HANSER OLIVO LIRANZO and EDWIN M. TAVAREZ, the defendants, about prescription drug trafficking.

f.   On or about December 12, 2011, in New Jersey, EDUARDO DIAZ, the defendant, met with JUAN MANUEL TAVAREZ PADILLA, the defendant, and gave him approximately $149,000 in cash as payment for second-hand prescription drugs.

g.   On or about December 16, 2011, in New Jersey, EDUARDO DIAZ, the defendant, met with JUAN MANUEL TAVAREZ

38

PADILLA and gave him approximately $30,000 in cash as payment for second-hand prescription drugs.

  h. From at least in or about 2008, up to and including in or about February 2010, ELIGIO ARMAS, the defendant, obtained second-hand prescription drugs from a co-conspirator not named as a defendant herein ("CC-4"), which ARMAS caused to be shipped to the DOMINGUEZ/VIERA Organization in Florida.

  i. On or about December 20, 2011, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," and JUAN MANUEL TAVAREZ PADILLA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, JUAN TAVAREZ stated that he wanted to obtain various HIV medications. PADILLA told JUAN TAVAREZ to call FARY R. CABA PADILLA, the defendant, and that JUAN MANUEL TAVAREZ PADILLA would leave TAVAREZ money so he could buy the prescription drugs and give them to HANSER OLIVO LIRANZO, the defendant.

  j. On or about October 31, 2011, AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while TAVAREZ was in the Bronx, New York. During the conversation, in substance and part, LIRANZO stated that TAVAREZ had handed in defective bottles of various HIV medications.

TAVAREZ indicated to LIRANZO that she was owed approximately $25,000 from the prescription drugs she had previously supplied.

k.    On or about September 22, 2011, MIGUEL PADILLA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, PADILLA asked LIRANZO whether LIRANZO was purchasing certain types of prescription drugs.  LIRANZO indicated he would purchase prescription drugs, which PADILLA agreed to sell to LIRANZO.

l.    On or about December 17, 2011, FARY R. CABA PADILLA and JUAN MANUEL TAVAREZ PADILLA, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, they discussed HIV medications that FARY R. CABA PADILLA would provide to JUAN MANUEL TAVAREZ PADILLA.

m.    On or about December 1, 2011, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," the defendant, met with ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," and ROBERTO TACHER, a/k/a "Robertico," the defendants, at a motel in New Jersey, where PERALTA provided them with boxes, a suitcase, and packing material.

n.    On or about December 1, 2011, ISRAEL TACHER and ROBERTO TACHER, the defendants, delivered four boxes containing a total of 301 bottles of HIV medication Kaletra, worth more than approximately $212,000 in Medicaid reimbursement value, to

40

a commercial interstate carrier for shipment from New Jersey to

the residence of KENNETH NELSON, the defendant, in Texas, for

the ORIA Organization.

      o.   On or about November 29, 2011, JOSELITO PERALTA,

a/k/a "Piki," and CARLOS PERALTA, the defendants, engaged in a

telephone conversation while JOSELITO PERALTA was in New York,

New York.  During the conversation, in substance and part,

CARLOS PERALTA and JOSELITO PERALTA discussed a deal for more

than 200 bottles of second-hand prescription drugs for $90 per

bottle.  JOSELITO PERALTA stated, in substance, that the bottles

were clean and stored in a drawer and that he would put them in

a box for CARLOS PERALTA.

      p.   On or about May 18, 2011, JUAN CARLOS PERALTA,

the defendant, removed patient labels from bottles of second-

hand prescription drugs inside the residence of JOSELITO PERALTA

in Ridgefield Park, New Jersey.

      q.   On or about July 23, 2011, GLENN LUIS CABRERA and

JOSELITO PERALTA, the defendants, engaged in a telephone

conversation.  During the conversation, in substance and part,

PERALTA asked CABRERA to check on the computer to identify a

pill bearing the stamp "Lilly 4420."  CABRERA replied that it

was the same as Zyprexa, a schizophrenia medication.

      r.   On or about September 15, 2011, KELVIN MANUEL

MARTINEZ TAVERAS and HANSER OLIVO LIRANZO, the defendants,

engaged in a telephone conversation while LIRANZO was in New York, New York.  During the conversation, in substance and part, LIRANZO instructed TAVERAS how to use a computer to scan a list of prescription drugs to send to JUAN MANUEL TAVAREZ PADILLA, the defendant, via an email address.

s.  On or about September 29, 2011, WILFRED RODRIGUEZ, a/k/a "Wilson," and JOSELITO PERALTA, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, RODRIGUEZ and PERALTA discussed prescription drugs Kaletra and Zyprexa and discussed cleaning bottles of second-hand prescription drugs.

t.  On or about September 18, 2011, JOSE RAMON GONZALEZ, a/k/a "Chamon," and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, GONZALEZ asked LIRANZO whether LIRANZO would bring GONZALEZ some money.  LIRANZO said he could not and that he had over $3,000 worth of HIV medications that were not re-salable because the labels were scratched.  GONZALEZ asked LIRANZO to call JUAN MANUEL TAVAREZ PADILLA, the defendant, about the money and stated that GONZALEZ was owed $6,000 because LIRANZO previously only gave him $30,000.

u.  On or about September 3, 2011, ALEX JUSTO and JOSELITO PERALTA, the defendants, engaged in a telephone

42

conversation. During the call, in substance and part, PERALTA told JUSTO that there was a bottle of an HIV medication that had the corner of the label peeled off and that PERALTA wanted JUSTO to know about it in case it was returned to him.

v. On or about September 19, 2011, YOEL FERNANDEZ RIVERO, a/k/a "Mango," and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, RIVERO stated that he would call the next day and would gather cash.

w. On or about September 6, 2011, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," and JOSELITO PERALTA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, ROSARIO asked whether PERALTA had defective bottles of various HIV medications. ROSARIO complained that PERALTA paid him less per bottle than PERALTA had paid others, and that JUAN MANUEL TAVAREZ PADILLA, the defendant, gave ROSARIO a portion of the profit for drugs ROSARIO provided to PADILLA. PERALTA stated that he also sold prescription drugs to PADILLA.

x. On or about October 22, 2011, JACQUELINE JIMENEZ, a/k/a "Morena," and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, they discussed the price and supply of

43

various HIV medications, and LIRANZO instructed JIMENEZ to check and make sure that the bottles were clean.

y.   On or about September 15, 2011, LUIS SANTANA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while LIRANZO was in the Bronx, New York.  During the conversation, in substance and part, SANTANA and LIRANZO agreed to meet in New York, New York.

z.   On or about September 18, 2011, LUIS SANTANA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while LIRANZO was in the Bronx, New York.  During the conversation, in substance and part, they discussed various prescription drugs, and LIRANZO said he would pay SANTANA the following day.

aa.   On or about July 14, 2011, LUIS SANTANA and CAYETANO PAULINO, the defendants, engaged in a telephone conversation while SANTANA was in the Bronx, New York.  During the call, in substance and part, SANTANA instructed PAULINO on how to clean second-hand prescription drug bottles so they did not become ruined.  PAULINO said he had various prescription drugs, and they discussed their street prices.  PAULINO said he would have a small suitcase when they met, and SANTANA said he would call PAULINO when he arrived.

bb.   On or about March 14, 2012, in the Bronx, New York, CAYETANO PAULINO, the defendant, possessed approximately

44

2,000 bottles of prescription drugs, including various HIV medications, with a Medicaid reimbursement value of approximately $611,000.

cc. On or about July 12, 2011, BAYOHAN DIAZ, a/k/a "Bayo," and LUIS SANTANA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, DIAZ asked SANTANA if he wanted to buy two full bottles and three empty bottles of an HIV medication. SANTANA said he had arrived at the house and would look at them.

dd. On or about July 30, 2011, ARMANDO GARCIA, the defendant, and CC-1 engaged in a telephone conversation. During the conversation, in substance and part, GARCIA and CC-1 discussed GARCIA's purchase of prescription medication, the price, and the dosage of the medication.

ee. In or about August 2011, VANESSA ROSARIO, the defendant, traveled from Florida to New Jersey and delivered a box containing 36 bottles of Kaletra (an HIV medication) and 108 bottles of Zyprexa (a schizophrenia medication), with a Medicaid reimbursement value of approximately $107,000, to a commercial interstate carrier for shipment from New Jersey to Texas.

ff. On or about August 31, 2011, SERGIO NOVO, the defendant, sent a text message to JOSELITO PERALTA, the defendant, which told PERALTA, in substance and part, to send

"Lazaro" a number of bottles of various HIV medications and that "Lazaro" would pay PERALTA.

gg. On or about August 31, 2011, LAZARO OSPINA and JOSELITO PERALTA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, PERALTA told OSPINA that he would give OSPINA something later, and OSPINA said he would be there.

hh. On or about February 2, 2012, in New Jersey, JOSELITO PERALTA, the defendant, possessed bottles and loose pills of various prescription drugs, with an approximate Medicaid reimbursement value of more than $612,000.

ii. In or about 2011, ALEX ORIA, the defendant, spoke by telephone with CC-2 to coordinate the purchase of prescription drugs for the ORIA Organization from CC-2, which CC-2 had obtained from the PERALTA Organization.

jj. From at least in or about 2011 through in or about 2012, ALEX ORIA, the defendant, and the ORIA Organization sold second-hand prescription drugs to a New York-based national health care company that provided specialty pharmacy and disease management services focused on HIV/AIDS patients ("Pharmacy-1").

kk. On or about August 18, 2008, a co-conspirator not named as a defendant herein ("CC-5"), who was employed by Pharmacy-1, sent an email to a Corrupt Distribution Company not named as a defendant herein, subject line "Defective Trizivir,"

an HIV medication, which stated, "Hello, [Pharmacy-1] received a
bottle of Trizivir that has another pharmacy's label on it!!
Someone is NOT CHECKING!!  Please credit on next order.
Thanks."

11.  In or about March 2011, JOE H. NELSON, the
defendant, opened a bank account for a Corrupt Distribution
Company to be used to buy and sell second-hand prescription
drugs.

mm.  In or about May 2012, KENNETH NELSON, the
defendant, opened a bank account for a Corrupt Distribution
Company to be used to buy and sell second-hand prescription
drugs.

nn.  In or about August 2011, CONRADO VAZQUEZ, the
defendant, purchased second-hand prescription drugs from a
coconspirator not named as a defendant herein ("CC-6").

(Title 18, United States Code, Section 371.)

COUNT THREE

(Conspiracy to Commit Trafficking in Counterfeit Goods)

The Grand Jury further charges:

58.  The allegations contained in paragraphs 1 through 41
and 57(a) through (nn) are hereby repeated, realleged, and
incorporated by reference as if fully set forth herein.

59.  From at least in or about 2011, up to and including in
or about July 2012, in the Southern District of New York, and

elsewhere, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 2320(a)(1) and 2320(a)(2) of Title 18, United States Code.

60. It was a part and an object of the conspiracy that JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown, intentionally and knowingly would and did traffic in goods and use counterfeit marks on and in connection with such goods, in violation of Title 18, United States Code, Section 2320(a)(1).

61. It further was a part and an object of the conspiracy that JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown, willfully and knowingly would and did traffic in labels, stickers, wrappers, emblems, boxes, containers, cans, cases, documentation and packaging, knowing that counterfeit marks had been applied thereto, the use of which was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Section 2320(a)(2).

<u>Overt Act</u>

62. In furtherance of the conspiracy and to effect the illegal objects thereof, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, and others known and unknown,

committed the following overt act, among others, in the Southern District of New York and elsewhere:

a. On or about August 25, 2011, JOSELITO PERALTA and VANESSA ROSARIO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, ROSARIO and PERALTA discussed counterfeit prescription drug labels that ROSARIO had obtained and sent to PERALTA. PERALTA complained that the paper was too dark and that it peels.

ROSARIO told PERALTA to give them back to her and she would send them back to her supplier if PERALTA told her what needed to be changed.

(Title 18, United States Code, Section 2320(a).)

## COUNT FOUR

### (Narcotics Conspiracy)

The Grand Jury further charges:

63. The allegations contained in paragraphs 1 through 41 and 57(a) through (nn) above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

### THE DEFENDANTS

64. As alleged below, several of the defendants involved in the scheme charged in Counts One and Two also conspired with each other and the following individuals to distribute and

possess with the intent to distribute prescription drugs that
are controlled substances:

a.   At various times relevant to the charges in this
Indictment, JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo,"
the defendant, sold controlled substances to the PADILLA
Organization for distribution.

b.   At various times relevant to the charges in this
Indictment, BRENDA SANTOS, the defendant, purchased controlled
substances from the PADILLA Organization for distribution.

c.   At various times relevant to the charges in this
Indictment, IRA KARP, the defendant, purchased controlled
substances from the PADILLA Organization, which KARP intended to
sell to others.  At all times relevant to the charges in this
Indictment, KARP, a retired pharmacist, was not licensed to
distribute prescription drugs or controlled substances.

### STATUTORY ALLEGATIONS

65.   In or about 2011, in the Southern District of New York
and elsewhere, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a
"Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ,
a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a
"Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro,"
a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado
Castillo," VANESSA ROSARIO, BRENDA SANTOS, and IRA KARP, the
defendants, and others known and unknown, intentionally and

knowingly combined, conspired, confederated, and agreed together
and with each other to violate the narcotics laws of the United
States.

66.   It was a part and an object of the conspiracy that
JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a
"Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona,"
a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO
LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL
GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO,
BRENDA SANTOS, and IRA KARP, the defendants, and others known
and unknown, would and did distribute and possess with the
intent to distribute a controlled substance, in violation of 21
U.S.C. § 841(a)(1).

67.   The controlled substance involved in the offense was
mixtures and substances containing a detectable amount of
oxycodone, in violation of 21 U.S.C. § 841(b)(1)(C).

### Overt Acts

68.   In furtherance of the conspiracy and to effect the
illegal object thereof, JUAN MANUEL TAVAREZ PADILLA, JUAN
TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA
CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO
PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO,
a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel
Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, and IRA KARP,

the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about December 7, 2011, JUAN MANUEL TAVAREZ PADILLA and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, they discussed the price of Percocet, which contains oxycodone.

b. On or about November 28, 2011, JUAN TAVAREZ and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while TAVAREZ was in the Bronx, New York. During the conversation, in substance and part, LIRANZO told TAVAREZ that someone had 6,000 tablets of Percocet, which contains oxycodone, to sell at $4.50 per tablet. TAVAREZ told LIRANZO to wait until after TAVAREZ called someone else.

c. On or about September 16, 2011, AURA CATALINA TAVAREZ and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation while TAVAREZ and LIRANZO were in the Bronx, New York. During the conversation, in substance and part, LIRANZO and TAVAREZ discussed oxycodone and prices.

d. On or about August 20, 2011, JOSELITO PERALTA and AMAURIS A. ROSARIO, the defendants, engaged in a telephone conversation while ROSARIO was in New York, New York. During the conversation, in substance and part, PERALTA and ROSARIO

discussed oxycodone tablets that ROSARIO had and the price another person would pay for them.

      e.   On or about December 4, 2011, JOEL GABRIEL CASADO and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, LIRANZO and CASADO discussed the price of oxycodone tablets that CASADO would purchase from someone else to sell to LIRANZO.

      f.   On or about September 22, 2011, VANESSA ROSARIO and JOSELITO PERALTA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, PERALTA and ROSARIO discussed various types of oxycodone tablets.

      g.   On or about December 4, 2011, BRENDA SANTOS and HANSER OLIVO LIRANZO, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, LIRANZO asked whether SANTOS needed Percocet tablets, which contain oxycodone, and said that he had more than 2,000 of them. SANTOS replied that she would check and call LIRANZO back.

      h.   In or about December 2011, IRA KARP, the defendant, purchased approximately 1,000 oxycodone tablets from JUAN MANUEL TAVAREZ PADILLA, the defendant, at KARP's residence in New York, New York, which KARP intended to sell to another individual.

      (Title 21, United States Code, Section 846.)

53

COUNT FIVE

(Narcotics Conspiracy)

The Grand Jury further charges:

69.   The allegations contained in paragraphs 1 through 41 and 57(a) through (nn) above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

THE DEFENDANTS

70.   As alleged below, several of the defendants involved in the scheme charged in Counts One and Two also conspired with each other and the following individuals to distribute and possess with the intent to distribute prescription drugs that are controlled substances:

a.   At various times relevant to the charges in this Indictment, JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, and MILAGROS ACEVEDO, the defendants, sold controlled substances to the SANTANA Organization for distribution.

b.   At various times relevant to the charges in this Indictment, LUIS ABREU, the defendant, purchased large amounts of controlled substances from the SANTANA Organization, which ABREU intended to distribute in and around Massachusetts.

STATUTORY ALLEGATIONS

71.   In or about 2011, in the Southern District of New York and elsewhere, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo,"

54

CAYETANO PAULINO, JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a
"Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU, the
defendants, and others known and unknown, intentionally and
knowingly combined, conspired, confederated, and agreed together
and with each other to violate the narcotics laws of the United
States.

72. It was a part and an object of the conspiracy that
LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, JOSE
FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE,
MILAGROS ACEVEDO, and LUIS ABREU, the defendants, and others
known and unknown, would and did distribute and possess with the
intent to distribute controlled substances, in violation of 21
U.S.C. § 841(a)(1).

73. The controlled substances involved in the offense were
(1) mixtures and substances containing a detectable amount of
oxycodone; and (2) mixtures and substances containing a
detectable amount of oxymorphone, in violation of 21 U.S.C. §
841(b)(1)(C).

<u>Overt Acts</u>

74. In furtherance of the conspiracy and to effect the
illegal object thereof, LUIS SANTANA, BAYOHAN DIAZ, a/k/a
"Bayo," CAYETANO PAULINO, JOSE FELIPE, a/k/a "Gino," BENITO
DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS
ABREU the defendants, and others known and unknown, committed

the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about July 8, 2011, LUIS SANTANA and LUIS ABREU, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, SANTANA and ABREU discussed the purchase and sale of various types of oxycodone tablets with different imprints on them.

b.   On or about August 1, 2011, LUIS ABREU, the defendant, traveled from Massachusetts to the Bronx, New York, to pick up controlled substances.

c.   On or about July 22, 2011, BAYOHAN DIAZ and CAYETANO PAULINO, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part, DIAZ asked whether CAYETANO could obtain oxymorphone tablets to sell to DIAZ, and they discussed the price.

d.   On or about July 8, 2011, JOSE FELIPE and LUIS SANTANA, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, SANTANA asked whether FELIPE had oxycodone for him and discussed controlled prescription drugs that FELIPE had provided to SANTANA previously.

e.   On or about July 19, 2011, BENITO DURAN and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation.  During the conversation, in substance and part,

56

DIAZ told DURAN that he wanted blue oxycodone tablets with "M 30" imprinted on them.

f.   On or about July 28, 2011, ARELIS LEE and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation. During the conversation, in substance and part, LEE asked DIAZ whether LEE should make a deal for 40 mg tablets of oxymorphone. DIAZ instructed LEE to make sure they were 40 mg tablets.

g.   On or about August 11, 2011, MILAGROS ACEVEDO and BAYOHAN DIAZ, the defendants, engaged in a telephone conversation.   During the conversation, in substance and part, DIAZ agreed to purchase oxycodone tablets from ACEVEDO if she delivered them to him.

(Title 21, United States Code, Section 846.)

## COUNT SIX

(Money Laundering Conspiracy)

The Grand Jury further charges:

75.   The allegations contained in paragraphs 1 through 41 and 57(a) through (nn) above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

76.   From at least in or about August 2011, up to and including in or about January 2012, in the Southern District of New York and elsewhere, ALEX ORIA, JOE H. NELSON, and KENNETH NELSON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree

together and with each other to violate Title 18, United States
Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957(a).

77.   It was a part and an object of the conspiracy that
ALEX ORIA, JOE H. NELSON, and KENNETH NELSON, the defendants,
and others known and unknown, in an offense involving and
affecting interstate and foreign commerce, knowing that the
property involved in certain financial transactions represented
the proceeds of some form of unlawful activity, willfully and
knowingly would and did conduct and attempt to conduct such
financial transactions which in fact involved the proceeds of
specified unlawful activity, to wit, the proceeds of
prescription drug trafficking offenses constituting mail fraud,
wire fraud and health care fraud, with intent to promote the
carrying on of specified unlawful activity, in violation of
Title 18, United States Code, Section 1956(a)(1)(A)(i).

78.   It was further a part and an object of the conspiracy
that ALEX ORIA, JOE H. NELSON, and KENNETH NELSON, the
defendants, and others known and unknown, in an offense
involving and affecting interstate and foreign commerce, knowing
that the property involved in certain financial transactions
represented the proceeds of some form of unlawful activity,
willfully and knowingly would and did conduct and attempt to
conduct such financial transactions which in fact involved the
proceeds of specified unlawful activity, to wit, the proceeds of

prescription drug trafficking offenses constituting mail fraud, wire fraud and health care fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

79.   It was further a part and an object of the conspiracy that ALEX ORIA, JOE H. NELSON, and KENNETH NELSON, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, willfully and knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the proceeds of prescription drug trafficking offenses constituting mail fraud, wire fraud and health care fraud, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

### FORFEITURE ALLEGATIONS

80.   As a result of committing the conspiracy to commit mail fraud, wire fraud, and health care fraud offense alleged in Count One of this Indictment, JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos

Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon," ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a "Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ, a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

81.  As a result of committing the conspiracy to commit mail fraud, wire fraud, and health care fraud offense alleged in Count One of this Indictment, JUAN CARLOS VIERA, a/k/a "Gordo,"

60

a/k/a "Jon Jon," JOSE MANUEL DOMINGUEZ, a/k/a "Flaco," JULIO
DOMINGUEZ, CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos
Alberto Padron Pena," JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ,
a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA
TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," EDWIN M. TAVAREZ,
a/k/a "Junior," a/k/a "Chepe," ISRAEL TACHER, a/k/a "Capi,"
a/k/a "El Judio," ROBERTO TACHER, a/k/a "Robertico," VANESSA
ROSARIO, ELIGIO ARMAS, EDUARDO DIAZ, CARLOS PERALTA, a/k/a
"Platano," a/k/a "Chino," JOSELITO PERALTA, a/k/a "Piki," JUAN
CARLOS PERALTA, HANSER OLIVO LIRANZO, KELVIN MANUEL MARTINEZ
TAVERAS, GLENN LUIS CABRERA, a/k/a "Luigi," FARY R. CABA
PADILLA, MIGUEL PADILLA, AMERICO LUIS GARCIA DOMINGUEZ, WILFRED
RODRIGUEZ, a/k/a "Wilson," JOSE RAMON GONZALEZ, a/k/a "Chamon,"
ALEX JUSTO, YOEL FERNANDEZ RIVERO, a/k/a "Mango," AMAURIS A.
ROSARIO, a/k/a "Maro," a/k/a "Mauro," JACQUELINE JIMENEZ, a/k/a
"Morena," LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO
PAULINO, ARMANDO GARCIA, SERGIO NOVO, LAZARO OSPINA, ALEX ORIA,
JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, EFREN RUIZ,
a/k/a "Socio," and ABEL GONZALEZ, a/k/a "Abelito," the
defendants, shall forfeit to the United States, pursuant to 18
U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property
constituting, or derived from, proceeds traceable to such
offense.

82.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property constituting, or derived from, proceeds traceable to such offense.

83.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(C) and (b), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the commission of such offense.

84.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(B) and (b), any property used, or intended to be used, in any manner or part to commit or facilitate the commission of such offense.

85.  As a result of committing the conspiracy to commit trafficking in counterfeit goods offense alleged in Count Three of this Indictment, JOSELITO PERALTA, a/k/a "Piki," and VANESSA

62

ROSARIO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. §§ 2323 (a)(1)(A) and (b), any article the making or trafficking of which is prohibited under 18 U.S.C. § 2320.

86. As a result of committing the conspiracy to violate the narcotics laws of the United States offenses alleged in Counts Four and Five of this Indictment, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, IRA KARP, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO PAULINO, JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano," ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU, the defendants, shall forfeit to the United States, pursuant to 21 U.S.C. § 852(a)(1), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

87. As a result of committing the conspiracy to violate the narcotics laws of the United States offenses alleged in Counts Four and Five of this Indictment, JUAN MANUEL TAVAREZ PADILLA, JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene," AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa," JOSELITO PERALTA, a/k/a "Piki," HANSER OLIVO LIRANZO, AMAURIS A.

63

ROSARIO, a/k/a "Maro," a/k/a "Mauro," JOEL GABRIEL CASADO, a/k/a

"Joel Casado Castillo," VANESSA ROSARIO, BRENDA SANTOS, IRA

KARP, LUIS SANTANA, BAYOHAN DIAZ, a/k/a "Bayo," CAYETANO

PAULINO, JOSE FELIPE, a/k/a "Gino," BENITO DURAN, a/k/a "Beano,"

ARELIS LEE, MILAGROS ACEVEDO, and LUIS ABREU, the defendants,

shall forfeit to the United States, pursuant to 21 U.S.C. §

852(a)(2), any property used, or intended to be used, in any

manner or part to commit or facilitate the commission of such

offenses.

88.   As a result of committing the conspiracy to money

laundering offense alleged in Count Six of this Indictment, ALEX

ORIA, JOE H. NELSON, and KENNETH NELSON, the defendants, shall

forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1),

any property, real and personal, involved in such offense, and

any property traceable to such property.

Substitute Assets Provision

89.   If any of the above-described forfeitable property, as

a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due

diligence;

b.   has been transferred or sold to, or

deposited with, a third party;

c.   has been placed beyond the jurisdiction of

the court;

64

     d. has been substantially diminished in value;

or

     e. has been commingled with other property

which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C.

§ 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other

described forfeitable property.

   (Title 18, United States Code, Sections 981, 982, and 2323
     Title 21, United States Code, Section 853, and
     Title 28, United States Code, Section 2461.)


_____   _Preet Bharara_____
FOREPERSON         PREET BHARARA
              UNITED STATES ATTORNEY

LUIS ABREU,
JOEL GABRIEL CASADO, a/k/a "Joel Casado Castillo,"
JOSE FELIPE, a/k/a "Gino,"
BENITO DURAN, a/k/a "Beano,"
ARELIS LEE,
MILAGROS ACEVEDO,
ALEX ORIA
JOE H. NELSON,
KENNETH NELSON,
CONRADO VAZQUEZ,
ABEL GONZALEZ, a/k/a "Abelito," and
EFREN RUIZ, a/k/a "Socio,"

**Defendants.**

## SUPERSEDING INDICTMENT

S2 11 Cr. 1072 (DLC)

(18 U.S.C. §§ 371, 1349, 1956, 2320, 981, 982, and 2323; 21 U.S.C.
§§ 846, 853; 28 U.S.C. § 2461.)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

67

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JUAN CARLOS VIERA, a/k/a "Gordo," a/k/a "Jon Jon,"
JOSE MANUEL DOMINGUEZ, a/k/a "Flaco,"
JULIO DOMINGUEZ,
CARLOS ALBERTO PADRON, a/k/a "Lindo," a/k/a "Carlos Alberto
Padron Pena,"
JUAN MANUEL TAVAREZ PADILLA,
JUAN TAVAREZ, a/k/a "Patron," a/k/a "Jefe," a/k/a "Nene,"
AURA CATALINA TAVAREZ, a/k/a "La Patrona," a/k/a "Jefa,"
EDWIN M. TAVAREZ, a/k/a "Junior," a/k/a "Chepe,"
ISRAEL TACHER, a/k/a "Capi," a/k/a "El Judio,"
ROBERTO TACHER, a/k/a "Robertico,"
VANESSA ROSARIO,
ELIGIO ARMAS,
EDUARDO DIAZ,
CARLOS PERALTA, a/k/a "Platano," a/k/a "Chino,"
JOSELITO PERALTA, a/k/a "Piki,"
JUAN CARLOS PERALTA,
HANSER OLIVO LIRANZO,
KELVIN MANUEL MARTINEZ TAVERAS,
GLENN LUIS CABRERA, a/k/a "Luigi,"
FARY R. CABA PADILLA,
MIGUEL PADILLA,
AMERICO LUIS GARCIA DOMINGUEZ,
WILFRED RODRIGUEZ, a/k/a "Wilson,"
JOSE RAMON GONZALEZ, a/k/a "Chamon,"
ALEX JUSTO,
YOEL FERNANDEZ RIVERO, a/k/a "Mango,"
AMAURIS A. ROSARIO, a/k/a "Maro," a/k/a "Mauro,"
JACQUELINE JIMENEZ, a/k/a "Morena,"
LUIS SANTANA,
BAYOHAN DIAZ, a/k/a "Bayo,"
CAYETANO PAULINO,
ARMANDO GARCIA,
SERGIO NOVO,
LAZARO OSPINA,
BRENDA SANTOS,
IRA KARP,

8/14/12 Fld. Superseding Indictment.

Pitman, USMJ

Query     Reports     Utilities     Help     What's New     Log Out

ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:11-cr-01072-DLC-10

Case title: USA v. Viera et al                    Date Filed: 12/14/2011
                                                  Date Terminated: 01/23/2014

Assigned to: Judge Denise L. Cote

**Defendant (10)**

**Roberto Tacher**                    represented by   **Frank J. Gaviria**
*TERMINATED: 01/23/2014*                              Frank Gaviria P.A
*also known as*                                       175 SW 7th Street, Ste 2009
Sealed Defendant 10                                   Miami, FL 33130
*TERMINATED: 01/23/2014*                              (305)-379-4441
*also known as*                                       Email: thefloridalawyer@yahoo.com
Robertico                                             *PRO HAC VICE*
*TERMINATED: 01/23/2014*                              *ATTORNEY TO BE NOTICED*
                                                      *Designation: Retained*

**Pending Counts**                                    **Disposition**

18:371.F CONSPIRACY TO VIOLATE                        Imprisonment for a total term of 37
FDCA (MIS-BRANDING,                                   months. Supervised release for a term of 3
ADULTERATION, UNLAWFUL                                years.
WHOLESALE DISTRIBUTION)
(2s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                 **Disposition**

18:1349.F ATTEMPT AND                                 Underlying Indictment counts are
CONSPIRACY TO COMMIT MAIL,                            dismissed on the motion of the US
WIRE AND HEALTHCARE FRAUD
(1)

ATTEMPT AND CONSPIRACY TO                             Underlying Indictment counts are
COMMIT MAIL, WIRE AND HEALTH                          dismissed on the motion of the US
CARE FRAUD

(1s)

18:371.F CONSPIRACY TO VIOLATE FDCA

(2)

Underlying Indictment counts are dismissed on the motion of the US

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

| | | |
|---|---|---|
| USA | represented by | **Jason Andrew Masimore** |
| | | Kobre & Kim LLP (NYC) |
| | | 800 Third Avenue |
| | | New York, NY 10022 |
| | | 212-448-1200 |
| | | Email: jmasimore@gmail.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Edward B. Diskant** |
| | | United States Attorney Office, SDNY |
| | | One Saint Andrew's Plaza |
| | | New York, NY 10007 |
| | | (212) 637-2294 |
| | | Fax: (212) 637-2527 |
| | | Email: edward.diskant@usdoj.gov |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **John Martin Weinberg** |
| | | John M. Weinberg, P.A. |
| | | 315 Southeast 7 Street, First Floor |
| | | Fort Lauderdale, FL 33301 |
| | | (954)-812-4070 |
| | | Fax: (954)-524-9304 |
| | | Email: jmwlawster@gmail.com |
| | | *TERMINATED: 12/02/2013* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Kathleen Ann Zebrowski** |
| | | U.S. Attorney's Office, SDNY (86 Chambers St.) |

86 Chambers Street
New York, NY 10007
(212) 637-2200
Fax: (212) 637-2717
Email: Kathleen.Zebrowski@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Russell Capone**
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2247
Fax: (212)-627-2527
Email: russell.capone@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2012 | 6 | SEALED S(1)INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, 2, Sealed Defendant 2 (2) count(s) 1, 2, Sealed Defendant 3 (3) count(s) 1, 2, Sealed Defendant 4 (4) count(s) 1, 2, Sealed Defendant 5 (5) count(s) 1, 2, 4, Sealed Defendant 6 (6) count(s) 1, 2, 4, Sealed Defendant 7 (7) count(s) 1, 2, 4, Sealed Defendant 8 (8) count(s) 1, 2, Sealed Defendant 9 (9) count(s) 1, 2, Sealed Defendant 10 (10) count(s) 1, 2, Sealed Defendant 11 (11) count(s) 1, 2, 3, 4, Sealed Defendant 12 (12) count(s) 1, 2, Sealed Defendant 13 (13) count(s) 1, 2, Sealed Defendant 14 (14) count(s) 1, 2, Sealed Defendant 15 (15) count(s) 1, 2, 3, 4, Sealed Defendant 16 (16) count(s) 1, 2, Sealed Defendant 17 (17) count(s) 1, 2, 4, Sealed Defendant 18 (18) count(s) 1, 2, Sealed Defendant 19 (19) count(s) 1, 2, Sealed Defendant 20 (20) count(s) 1, 2, Sealed Defendant 21 (21) count(s) 1, 2, Sealed Defendant 22 (22) count(s) 1, 2, Sealed Defendant 23 (23) count(s) 1, 2, Sealed Defendant 24 (24) count(s) 1, 2, Sealed Defendant 25 (25) count(s) 1, 2, Sealed Defendant 26 (26) count(s) 1, 2, Sealed Defendant 27 (27) count(s) 1, 2, 4, Sealed Defendant 28 (28) count(s) 1, 2, Sealed Defendant 29 (29) count(s) 1, 2, 5, Sealed Defendant 30 (30) count(s) 1, 2, 5, Sealed Defendant 31 (31) count(s) 1, 2, 5, Sealed Defendant 32 (32) count(s) 1, 2, Sealed Defendant 33 (33) count(s) 1, 2, Sealed Defendant 34 (34) count(s) 1, 2, Sealed Defendant 35 (35) count(s) 4, Sealed Defendant 36 (36) count(s) 4, Sealed Defendant 37 (37) count(s) 5, Sealed Defendant 38 (38) count(s) 4, Sealed Defendant 39 (39) count(s) 5, Sealed Defendant 40 (40) count(s) 5, Sealed Defendant 41 (41) count(s) 5, Sealed defendant 42 (42) count(s) 5. (jm) Modified on 7/18/2012 (jm). (Entered: 07/18/2012) |
| 07/17/2012 | 7 | Order to Unseal S(1)Indictment as to Sealed Defendant 1, Sealed Defendant 2, Sealed Defendant 3, Sealed Defendant 4, Sealed Defendant 5, Sealed Defendant 6, Sealed Defendant 7, Sealed Defendant 8, Sealed Defendant 9, Sealed Defendant 10, Sealed Defendant 11, Sealed Defendant 12, Sealed Defendant 13, Sealed Defendant 14, Sealed Defendant 15, Sealed Defendant 16, Sealed Defendant 17, Sealed Defendant 18, Sealed Defendant 19, Sealed Defendant 20, Sealed Defendant 21, Sealed |

|  |  |  |
|---|---|---|
|  |  | Defendant 22, Sealed Defendant 23, Sealed Defendant 24, Sealed Defendant 25, Sealed Defendant 26, Sealed Defendant 27, Sealed Defendant 28, Sealed Defendant 29, Sealed Defendant 30, Sealed Defendant 31, Sealed Defendant 32, Sealed Defendant 33, Sealed Defendant 34, Sealed Defendant 35, Sealed Defendant 36, Sealed Defendant 37, Sealed Defendant 38, Sealed Defendant 39, Sealed Defendant 40, Sealed Defendant 41, Sealed defendant 42.. (Signed by Magistrate Judge Frank Maas on 7/17/12)(jm) (Entered: 07/18/2012) |
| 07/17/2012 |  | S(1)INDICTMENT UNSEALED as to Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas. (jm) (Entered: 07/18/2012) |
| 07/17/2012 |  | Case Designated ECF as to Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas. (jm) (Entered: 07/18/2012) |
| 07/17/2012 |  | Case as to Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas ASSIGNED to Judge Judge Denise L. Cote. Judge Judge Unassigned no longer assigned to the case. (jm) (Entered: 07/18/2012) |
| 07/17/2012 | 51 | MEMORANDUM OF LAW in Support Of The Detention Without Bail of Certain Defendants by USA as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. (Attachments: # 1 Exhibit)(jm) (Entered: 07/18/2012) |
| 07/19/2012 | 56 | SEALED DOCUMENT placed in vault. (mps) (Entered: 07/20/2012) |
| 07/20/2012 | 57 | NOTICE OF ATTORNEY APPEARANCE Jason Andrew Masimore appearing for USA. (Masimore, Jason) (Entered: 07/20/2012) |
| 07/20/2012 | 58 | NOTICE OF ATTORNEY APPEARANCE Edward B. Diskant appearing for USA. (Diskant, Edward) (Entered: 07/20/2012) |
| 07/20/2012 | 59 | ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. On 7/19/2012, the Government requested that time be excluded until the initial conference in this matter, on |

| | | |
|---|---|---|
| | | 7/23/2012, pursuant to the Speedy Trial Act Title 18, United States Code, Section 3161(h)(7)(A); and the granting of this continuance best serves the ends of justice and outweighs the best interests of the public and the defendants in a speedy trial. IT IS HEREBY ORDERED that time is excluded from the date of this Order, 7/20/2012 until 7/23/2012. (Signed by Judge Denise L. Cote on 7/20/2012)(ja) (Entered: 07/20/2012) |
| 07/23/2012 | 61 | NOTICE OF ATTORNEY APPEARANCE Russell Capone appearing for USA. (Capone, Russell) (Entered: 07/23/2012) |
| 07/27/2012 | 102 | ORDER as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. IT IS HEREBY ORDERED that the Clerk of Court shall make part of the record the Spanish translation of the Indictment attached to this Order. SO ORDERED: (Signed by Judge Denise L. Cote on 7/27/2012)(bw) (Entered: 07/30/2012) |
| 07/31/2012 | 141 | SEALED DOCUMENT placed in vault. (nm) (Entered: 08/01/2012) |
| 07/31/2012 | 142 | SEALED DOCUMENT placed in vault. (nm) (Entered: 08/01/2012) |
| 08/02/2012 | 152 | ORDER as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo., Order to Unseal Document as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. We write to request that the Court order the Clerk's office to unseal the following docket |

| | | |
|---|---|---|
| | | numbers for the purpose of allowing the US Atty's Office to obtain a copy of their contents. The below-listed docket numbers correspond to various applications made during an investigation leading up to the above-referenced case. 11Mag0947; 11Mag1452; 11Mag2089; 11Mag2262; 11Mag2338; 11Mag2551; 11Mag2520; 12Mag0281; and 12Mag0314. (Signed by Magistrate Judge Ronald L. Ellis on 8/2/12)(jw) (Entered: 08/03/2012) |
| 08/07/2012 | 159 | ORDER as to (S1-11-Cr-1072-) Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. On July 17, 2012, the superseding indictment charging forty-two defendants in a two-count indictment was unsealed. Many of the defendants have been assigned C.J.A. counsel. It is anticipated that hundreds of attorney hours will be expended. Accordingly, it is hereby ORDERED that this Court identifies this case as a Mega case and directs that it be budgeted with the Second Circuit's case budgeting attorney. (Signed by Judge Denise L. Cote on 8/7/2012)(bw) (Entered: 08/07/2012) |
| 08/07/2012 | 160 | REQUEST as to (S1-11-Cr-1072-) Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo. On July 17, 2012, a superseding indictment charging forty-two defendants was unsealed. Many of the defendants have been assigned C.J.A. counsel. At the arraignment and initial conference held on July 23, C.J.A. counsel Adam Perlmutter graciously volunteered to act as the coordinating defense attorney for assigned counsel. Accordingly, it is hereby REQUESTED that Mr. Perlmutter contact Emma Greenwood, Coordinating Discovery Attorney, Office of Defender Services, of the Administrative Office of the United States Courts, to request her support of defense counsel in this case. (Signed by Judge Denise L. Cote on 8/7/2012)(bw) (Entered: 08/07/2012) |
| 08/14/2012 | 177 | SEALED DOCUMENT placed in vault. (nm) (Entered: 08/14/2012) |
| 08/14/2012 | 179 | (S2) SUPERSEDING INDICTMENT FILED as to Juan Carlos Viera (1) count(s) 1s, 2s, Jose Manuel Dominguez (2) count(s) 1s, 2s, Julio Dominguez (3) count(s) 1s, 2s, Carlos Alberto Padron (4) count(s) 1s, 2s, Juan Manuel Tavarez Padilla (5) count(s) |

| | | |
|---|---|---|
| | | 1s, 2s, 4s, Juan Tavarez (6) count(s) 1s, 2s, 4s, Aura Catalina Tavarez (7) count(s) 1s, 2s, 4s, Edwin M. Tavarez (8) count(s) 1s, 2s, Israel Tacher (9) count(s) 1s, 2s, Roberto Tacher (10) count(s) 1s, 2s, Vanessa Rosario (11) count(s) 1s, 2s, 3s, 4s, Eligio Armas (12) count(s) 1s, 2s, Eduardo Diaz (13) count(s) 1s, 2s, Carlos Peralta (14) count(s) 1s, 2s, Joselito Peralta (15) count(s) 1s, 2s, 3s, 4s, Juan Carlos Peralta (16) count(s) 1s, 2s, Hanser Olivo Liranzo (17) count(s) 1s, 2s, 4s, Kelvin Manuel Martinez Taveras (18) count(s) 1s, 2s, Glenn Luis Cabrera (19) count(s) 1s, 2s, Fary R. Caba Padilla (20) count(s) 1s, 2s, Miguel Padilla (21) count(s) 1s, 2s, Americo Luis Garcia Dominguez (22) count(s) 1s, 2s, Wilfred Rodriguez (23) count(s) 1s, 2s, Jose Ramon Gonzalez (24) count(s) 1s, 2s, Alex Justo (25) count(s) 1s, 2s, Yoel Fernandez Rivero (26) count(s) 1s, 2s, Amauris A. Rosario (27) count(s) 1s, 2s, 4s, Jacqueline Jimenez (28) count(s) 1s, 2s, Luis Santana (29) count(s) 1s, 2s, 5s, Bayohan Diaz (30) count(s) 1s, 2s, 5s, Paulino Cayetano (31) count(s) 1s, 2s, 5s, Armando Garcia (32) count(s) 1s, 2s, Sergio Novo (33) count(s) 1s, 2s, Lazaro Ospina (34) count(s) 1s, 2s, Brenda Santos (35) count(s) 4s, Ira Karp (36) count(s) 4s, Luis Abreu (37) count(s) 5s, Joel Gabriel Casado (38) count(s) 4s, Jose Felipe (39) count(s) 5s, Benito Duran (40) count(s) 5s, Arelis Lee (41) count(s) 5s, Milagros Acevedo (42) count(s) 5s, Alex Oria (43) count(s) 1, 2, 6, Joe H. Nelson (44) count(s) 1, 2, 6, Kenneth Nelson (45) count(s) 1, 2, 6, Conrado Vazquez (46) count(s) 1, 2, Abel Gonzalez (47) count(s) 1, 2, Efren Ruiz (48) count(s) 1, 2. (Attachments: # 1 indictment part 2) (jm) (Entered: 08/15/2012) |
| 08/30/2012 | 204 | MOTION for Frank J. Gaviria to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Roberto Tacher. (pgu) (pgu). (Entered: 08/30/2012) |
| 08/30/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 204 MOTION for Frank J. Gaviria to Appear Pro Hac Vice. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (pgu)** (Entered: 09/20/2012) |
| 08/31/2012 | | CASHIERS OFFICE REMARK as to Roberto Tacher on 204 Motion to Appear Pro Hac Vice in the amount of $200.00, paid on 08/30/2012, Receipt Number 1047535. (jd) (Entered: 08/31/2012) |
| 09/06/2012 | 211 | SEALED DOCUMENT placed in vault. (nm) (Entered: 09/06/2012) |
| 09/13/2012 | 223 | ORDER as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo, Alex Oria, Joe H. Nelson, Kenneth Nelson, Conrado Vazquez, Efren Ruiz, Abel Gonzalez. On August 14, 2012, the Government filed a SecondSuperseding Indictment in this matter, S2 11 Cr. 1072. |

| | | |
|---|---|---|
| | | It is hereby ORDERED that counsel for those defendants who have not been arraigned on superseding indictment S2 11 Cr. 1072 must advise the Government no later than September 18, on which of the following three dates they will appear in Courtroom 15-B, 500 Pearl Street, with their clients for an arraignment: Tuesday, September 25 at 2 p.m. Wednesday, September 26 at 2:30 p.m. Thursday, September 27 at 2:30 p.m. IT IS FURTHER ORDERED that in the event a defendant does not provide such notice by September 18, the defendant and defense counsel must appear in Courtroom 15-B on September 27 at 2:30 p.m. (Signed by Judge Denise L. Cote on 9/13/2012)(dnd) (Entered: 09/13/2012) |
| 09/18/2012 | 229 | SEALED DOCUMENT placed in vault. (nm) (Entered: 09/19/2012) |
| 09/21/2012 | 231 | ORDER FOR ADMISSION PRO HAC VICE ON WRITTEN MOTION as to (11-Cr-1072-10) Roberto Tacher. Upon the motion of Terence Christian Scheurer attorney for Roberto Tacher and said sponsor attorney's affidavit in support; IT IS HEREBY ORDERED that: Frank J. Gaviria, Esq. Frank J. Gaviria, PA, 175 sw 7th Street, Ste 33130, Miami, FL 33130. Telephone: (305)379-4441, Facsimile: (305)379-4548, is admitted to practice pro hac vice as counsel for Roberto Tacher in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. If this action is assigned to the ECF system, counsel shall immediately apply for an ECF password at nysd.uscourts.gov. Counsel shall forward the pro hac vice fee to the Clerk of Court. ENDORSEMENT: GRANTED. (Signed by Judge Denise L. Cote on 9/20/2012)(bw) (Entered: 09/21/2012) |
| 09/21/2012 | 232 | ENDORSED LETTER as to Carlos Alberto Padron, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eduardo Diaz, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Amauris A. Rosario, Jacqueline Jimenez, Paulino Cayetano, Brenda Santos, Ira Karp, Joel Gabriel Casado, Benito Duran, Milagros Acevedo addressed to Judge Denise L. Cote from Jason A. Masimore; Russell Capone; Edward B. Diskant dated 9/20/2012 re: We write follow up on the Court's September 13, 2012 order (the "Scheduling Order") to defense counsel concerning scheduling arraignments for defendants who have not yet been arraigned on Superseding Indictment S2 11 Cr. 1072 (DLC) (the "Superseding Indictment"). Based on the responses and non-responses by September 18, 2012 from counsel pursuant to the Court's Scheduling Order, we respectfully request that the Court order the followingdefendants to appear at the following times to be arraigned on the Superseding Indictment, and order that counsel make their clients aware of their need to appear... ENDORSEMENT: It is hereby Ordered that the defendants and their attorneys appear at the designated dates and times. (Signed by Judge Denise L. Cote on 9/21/2012)(dnd) (Entered: 09/21/2012) |
| 09/21/2012 | | Set/Reset Hearings as to Carlos Alberto Padron, Israel Tacher, Roberto Tacher, Vanessa Rosario, Miguel Padilla, Jose Ramon Gonzalez, Alex Justo, Jacqueline Jimenez, Paulino Cayetano, Brenda Santos, Ira Karp, Joel Gabriel Casado, Benito Duran: Arraignment set for 9/27/2012 at 02:30 PM before Judge Denise L. Cote. (dnd) (Entered: 09/21/2012) |

| 09/21/2012 | 233 | ORDER as to (S1-11-Cr-1072-) Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo, Alex Oria, Joe H. Nelson, Kenneth Nelson, Conrado Vazquez, Efren Ruiz, Abel Gonzalez....[See Order]... IT IS on this 21st day of September, 2012, ORDERED, that any attorney appointed by this Court pursuant to the Criminal Justice Act in this matter who represents a defendant currently in federal custody is hereby authorized to incur the expense of $580 for a 160-gigabyte iPod to be loaded with the audio and visual discovery in this case through vendor DupeCoop and provide the same to that defendant wherever he or she is incarcerated. (Signed by Judge Denise L. Cote on 9/21/2012)(bw) (Entered: 09/24/2012) |
| 09/27/2012 | 242 | SEALED DOCUMENT placed in vault. (nm) (Entered: 09/27/2012) |
| 09/27/2012 | | Minute Entry for proceedings held before Judge Denise L. Cote:Initial Appearance as to Israel Tacher, Roberto Tacher, Jose Ramon Gonzalez, Jacqueline Jimenez, Brenda Santos, Ira Karp, Joel Gabriel Casado, Benito Duran held on 9/27/2012. (jw) (Entered: 09/28/2012) |
| 09/27/2012 | | Minute Entry for proceedings held before Judge Denise L. Cote:Arraignment as to Israel Tacher present with atty Teresa Elizabeht Williams (9) Count 1s,2s and Roberto Tacher present with atty Frank J. Gaviria by Terence Scheurer (10) Count 1s,2s and Jose Ramon Gonzalez present with atty Conway C. Martindale (24) Count 1s,2s and Jacqueline Jimenez present with atty Carlos Gonzalez (28) Count 1s,2s and Brenda Santos present with atty Noel Nafiu Akinsola (35) Count 4s and Ira Karp present with atty John Rodriguez (36) Count 4s and Joel Gabriel Casado present with atty Alix Duroseau (38) Count 4s and Benito Duran present with atty Daniel Nobel (40) Count 5s held on 9/27/2012. Assistant U.S. Attorney Russell Capone present. Spanish interpreter.James Hontoria present and sworn. Court Reporter Sam Mauro present. Defendants Israel Tacher, Roberto Tacher, Jose Ramon Gonzalez, Jacqueline Jimenez, Bredna Santos, Ira Karp, Joel Gabriel Casado and Benito Duran plead not guilty as charged in S2 11 Cr. 1072. For the reasons set forth on the record, the Court grants the Governments request for detention as to defendant Israel Tacher and vacates the Mag. Judges decision setting bail. (jw) (Entered: 09/28/2012) |
| 09/27/2012 | | Minute Entry for proceedings held before Judge Denise L. Cote: Plea entered by Israel Tacher (9) Count 1s,2s and Roberto Tacher (10) Count 1s,2s and Jose Ramon Gonzalez (24) Count 1s,2s and Jacqueline Jimenez (28) Count 1s,2s and Brenda Santos (35) Count 4s and Ira Karp (36) Count 4s and Joel Gabriel Casado (38) Count 4s and Benito Duran (40) Count 5s Not Guilty. (jw) (Entered: 09/28/2012) |
| 10/12/2012 | 262 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/12/2012) |

| 10/19/2012 | 266 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/22/2012) |
|---|---|---|
| 10/19/2012 | 267 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/22/2012) |
| 10/19/2012 | 268 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/22/2012) |
| 11/08/2012 | 274 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/09/2012) |
| 11/14/2012 | 277 | SEALED DOCUMENT placed in vault. (nm) (Entered: 11/15/2012) |
| 01/04/2013 | 292 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/04/2013) |
| 01/04/2013 | 294 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/04/2013) |
| 02/25/2013 | 314 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/25/2013) |
| 03/01/2013 | 318 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/01/2013) |
| 03/05/2013 | 320 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/06/2013) |
| 03/11/2013 | 322 | SEALED DOCUMENT placed in vault. (nm) (Entered: 03/11/2013) |
| 03/29/2013 | 333 | NOTICE OF ATTORNEY APPEARANCE: John Martin Weinberg appearing for Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo, Alex Oria, Joe H. Nelson, Kenneth Nelson, Conrado Vazquez, Abel Gonzalez, Efren Ruiz, Felipe Wated. Appearance Type: Retained. *Vanessa Rosario* (Weinberg, John) (Entered: 03/29/2013) |
| 04/29/2013 | 347 | SEALED DOCUMENT placed in vault. (nm) (Entered: 04/29/2013) |
| 05/07/2013 | 353 | SEALED DOCUMENT placed in vault. (nm) (Entered: 05/07/2013) |
| 05/20/2013 | 363 | SEALED DOCUMENT placed in vault. (mps) (Entered: 05/20/2013) |
| 06/18/2013 | 397 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/18/2013) |
| 06/18/2013 | 398 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/18/2013) |
| 06/18/2013 | 399 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/18/2013) |
| 07/12/2013 | 431 | Letter by USA as to (S2-11-Cr-1072-) Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, |

| | | |
|---|---|---|
| | | Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo, Alex Oria, Joe H. Nelson, Kenneth Nelson, Conrado Vazquez, Abel Gonzalez, Efren Ruiz, Felipe Wated addressed to Judge Denise L. Cote from AUSAs Jason A. Masimore, Russell Capone, Edward B. Diskant, dated July 12, 2013 re: We write to advise the Court concerning the status of the case, which involves 49 defendants, so that the Court can begin to make preparations for the trial set to commence on September 16, 2013. As we explain more fully below, our best estimate is that virtually all of the defendants have entered or will enter guilty pleas, and that there is one defendant whose counsel has communicated that his current intention is to go to trial and four defendants whose status is unknown, and whom we presume for purposes of discussing trial planning will go to trial. (bw) (Entered: 07/15/2013) |
| 07/16/2013 | 433 | SEALED DOCUMENT placed in vault. (mps) (Entered: 07/16/2013) |
| 07/17/2013 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice regarding Document No. 434 SECOND MOTION for Teresa Williams to Appear Pro Hac Vice. Motion and supporting papers to be reviewed by Clerk's Office staff.. The filing is deficient for the following reason(s): Missing Certificate of Good Standing.Missing Proposed Order. Re-file the document as a Motion to Appear Pro Hac Vice and attach a valid Certificate of Good Standing from the Supreme Court of Florida issued within the past 30 days.Re-file the document as a Motion to Appear Pro Hac Vice and attach a Proposed Order. (wb)** (Entered: 07/17/2013) |
| 08/02/2013 | 463 | SEALED DOCUMENT placed in vault. (mps) (Entered: 08/02/2013) |
| 08/02/2013 | 464 | SEALED DOCUMENT placed in vault. (mps) (Entered: 08/02/2013) |
| 08/08/2013 | 488 | SEALED DOCUMENT placed in vault. (nm) (Entered: 08/09/2013) |
| 08/08/2013 | 489 | SEALED DOCUMENT placed in vault. (nm) (Entered: 08/09/2013) |
| 08/09/2013 | | Minute Entry for proceedings held before Judge Denise L. Cote: Change of Plea Hearing as to Roberto Tacher held on 8/9/2013. Plea entered by Roberto Tacher (10) Guilty as to Count 2s. DEFT # 10- ROBERTO TACHER present w/atty Frank Gaviria. Assistant U.S. Attorney Jason Masimore present. Court reporter Denise Richards present. The defendant w/draws his not guilty plea and pleads guilty to count 2 of S2 11 Cr. 1072. The Court accepts the guilty plea. PSR Ordered. Sentence date set for January 17, 2014 at 2 p.m. Defense submissions regarding sentence due January 3. Govts response due January 10. Bail continued. (jbo) (Entered: 08/09/2013) |
| 08/09/2013 | | Change of Not Guilty Plea to Guilty Plea as to Roberto Tacher (10) Count 2s. (jbo) (Entered: 08/09/2013) |
| 08/09/2013 | | Order of Referral to Probation for Presentence Investigation and Report as to Roberto Tacher. (Signed by Judge Denise L. Cote on 8/9/13)(jbo) (Entered: 08/09/2013) |
| 08/22/2013 | 534 | SEALED DOCUMENT placed in vault. (mps) (Entered: 08/22/2013) |

| 09/05/2013 | 559 | TRANSCRIPT of Proceedings as to Roberto Tacher re: Plea held on 8/9/13 before Judge Denise L. Cote. Court Reporter/Transcriber: Denise Richards, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/30/2013. Redacted Transcript Deadline set for 10/10/2013. Release of Transcript Restriction set for 12/9/2013. (Rodriguez, Somari) (Entered: 09/05/2013) |
|---|---|---|
| 09/05/2013 | 560 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Roberto Tacher. Notice is hereby given that an official transcript of a Plea proceeding held on 8/9/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Rodriguez, Somari) (Entered: 09/05/2013) |
| 09/06/2013 | 564 | SEALED DOCUMENT placed in vault. (mps) (Entered: 09/09/2013) |
| 09/13/2013 | 569 | SEALED DOCUMENT placed in vault. (mps) (Entered: 09/13/2013) |
| 09/19/2013 | 580 | SEALED DOCUMENT placed in vault. (nm) (Entered: 09/19/2013) |
| 10/01/2013 | 599 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/02/2013) |
| 10/03/2013 | 606 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/03/2013) |
| 10/23/2013 | 645 | SEALED DOCUMENT placed in vault. (nm) (Entered: 10/24/2013) |
| 11/06/2013 | 669 | SEALED DOCUMENT placed in vault. (nm) (Entered: 11/07/2013) |
| 11/14/2013 | 682 | SEALED DOCUMENT placed in vault. (nm) (Entered: 11/15/2013) |
| 11/19/2013 | 691 | SEALED DOCUMENT placed in vault. (nm) (Entered: 11/19/2013) |
| 11/19/2013 | 692 | SEALED DOCUMENT placed in vault. (nm) (Entered: 11/19/2013) |
| 11/20/2013 | 693 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/21/2013) |
| 11/27/2013 | 714 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/27/2013) |
| 11/27/2013 | 715 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/27/2013) |
| 11/27/2013 | 716 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/27/2013) |
| 11/27/2013 | 717 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/27/2013) |
| 12/10/2013 | 739 | SEALED DOCUMENT placed in vault. (mps) (Entered: 12/10/2013) |
| 12/12/2013 | 745 | SEALED DOCUMENT placed in vault. (mps) (Entered: 12/12/2013) |
| 12/17/2013 | 754 | SEALED DOCUMENT placed in vault. (nm) (Entered: 12/17/2013) |
| 01/06/2014 | 765 | NOTICE of Filing as to Roberto Tacher (Attachments: # 1 Exhibit Character Letters) (Gaviria, Frank) (Entered: 01/06/2014) |
| 01/07/2014 | 768 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/07/2014) |

| 01/09/2014 | 774 | NOTICE of Filing as to Roberto Tacher (Attachments: # 1 Exhibit Character Letter) (Gaviria, Frank) (Entered: 01/09/2014) |
| 01/09/2014 | 779 | SENTENCING SUBMISSION by USA as to Roberto Tacher. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Masimore, Jason) (Entered: 01/09/2014) |
| 01/10/2014 | 781 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/10/2014) |
| 01/15/2014 | 786 | SEALED DOCUMENT placed in vault. (nm) (Entered: 01/15/2014) |
| 01/17/2014 | | Minute Entry for proceedings held before Judge Denise L. Cote: Sentencing held on 1/17/2014 for Roberto Tacher (10) Count 2s. DEFT # 10 ROBERTO TACHER present w/atty Frank Gaviria. Assistant U.S. Attorney Jason Masimore present. Court reporter Karen Gorlaski present. The defendant is sentenced as set forth in the Judgment In A Criminal Case Upon the motion of the Government, the underlying indictments, S1 11 Cr. 1072 and Count 1 of S2 11 Cr. 1072 are dismissed as to this defendant. Defendant advised of his right to appeal. Bail continued until the surrender date of February 28, 2014. (ajc) (Entered: 01/22/2014) |
| 01/21/2014 | 801 | ORDER of Restitution as to Roberto Tacher. Follows oral order of 1/17/2014.The Defendant shall pay restitution in the total amount of $212,000.00 to the victims of the offenses charged in Count One. Payments shall be made to the Clerk of the United States District Court, Southern District of New York, 500 Pearl Street, New York, New York 10007, Attention: Cashier's Office, who will disburse the payments to the victims set forth in the Schedule of Victims attached hereto. Upon advice of a change of address, the Clerk of the Court is authorized to send payments to the new address without further order of this Court. Defendant's liability for restitution shall be joint and several with that of any of the defendants... Defendant's liability for restitution shall continue unabated until either the Defendant has paid the full amount of restitution ordered herein, or every victim has been paid the total amount of his loss from all the restitution paid by the Defendant and co-defendants in this matter. (Signed by Judge Denise L. Cote on 1/17/2014)(gr) (Entered: 01/21/2014) |
| 01/23/2014 | | DISMISSAL OF COUNTS on Government Motion as to Roberto Tacher (10) Count 1,1s,2. (jw) (Entered: 01/23/2014) |
| 01/23/2014 | 810 | FILED JUDGMENT IN A CRIMINAL CASE (S2-11-Cr-1072-10) as to Roberto Tacher (10), Count(s) 1, 1s, 2, Underlying Indictment counts are dismissed on the motion of the US. Pleaded guilty to Count(s) 2s, Imprisonment for a total term of 37 months. Supervised release for a term of 3 years. The court makes the following recommendations to the Bureau of Prisons That the defendant be designated to a facility as close to Florida as possible. The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons before 2pm on 2/28/14 as notified by the Probation or Pretrial Services Office. Special Assessment of $100 which is due immediately. Restitution of $212,000.00. Restitution payment shall begin while the defendant is in prison. If the defendant is engaged in a non-UNICOR work program, the defendant shall pay $25 per quarter toward restitution. (Signed by Judge Denise L. Cote on 1/23/14)(jw); Modified on 1/28/2014 (bw). (Entered: 01/23/2014) |
| 01/27/2014 | 817 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/28/2014) |

| 01/28/2014 | 821 | SEALED DOCUMENT placed in vault. (mps) (Entered: 01/28/2014) |
| 02/13/2014 | 837 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/13/2014) |
| 02/13/2014 | 838 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/13/2014) |
| 02/13/2014 | 839 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/13/2014) |
| 02/18/2014 | 843 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2014) |
| 02/18/2014 | 844 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2014) |
| 02/18/2014 | 845 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2014) |
| 02/18/2014 | 846 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2014) |
| 02/19/2014 | 851 | TRANSCRIPT of Proceedings as to Roberto Tacher re: Sentence held on 1/17/14 before Judge Denise L. Cote. Court Reporter/Transcriber: Karen Gorlaski, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/17/2014. Redacted Transcript Deadline set for 3/27/2014. Release of Transcript Restriction set for 5/23/2014. (Rodriguez, Somari) (Entered: 02/19/2014) |
| 02/19/2014 | 852 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Roberto Tacher. Notice is hereby given that an official transcript of a Sentence proceeding held on 1/17/14 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Rodriguez, Somari) (Entered: 02/19/2014) |
| 02/24/2014 | 861 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/24/2014) |
| 03/13/2014 | 873 | SEALED DOCUMENT placed in vault. (nm) (Entered: 03/14/2014) |
| 03/14/2014 | 874 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/17/2014) |
| 03/18/2014 | 878 | SEALED DOCUMENT placed in vault. (nm) (Entered: 03/18/2014) |
| 04/16/2014 | 900 | ORDER as to Juan Carlos Viera, Jose Manuel Dominguez, Julio Dominguez, Carlos Alberto Padron, Juan Manuel Tavarez Padilla, Juan Tavarez, Aura Catalina Tavarez, Edwin M. Tavarez, Israel Tacher, Roberto Tacher, Vanessa Rosario, Eligio Armas, Eduardo Diaz, Carlos Peralta, Joselito Peralta, Juan Carlos Peralta, Hanser Olivo Liranzo, Kelvin Manuel Martinez Taveras, Glenn Luis Cabrera, Fary R. Caba Padilla, Miguel Padilla, Americo Luis Garcia Dominguez, Wilfred Rodriguez, Jose Ramon Gonzalez, Alex Justo, Yoel Fernandez Rivero, Amauris A. Rosario, Jacqueline Jimenez, Luis Santana, Bayohan Diaz, Paulino Cayetano, Armando Garcia, Sergio Novo, Lazaro Ospina, Brenda Santos, Ira Karp, Luis Abreu, Joel Gabriel Casado, Jose Felipe, Benito Duran, Arelis Lee, Milagros Acevedo, Alex Oria, Joe H. Nelson, Kenneth Nelson, Conrado Vazquez, Efren Ruiz, Abel Gonzalez, Felipe Wated. It is hereby ordered that because of the anticipated length of the representation in this case, CJA attorney(s) may submit interim vouchers for representation of his/their |

| | | |
|---|---|---|
| | | client. Each voucher is to cover a minimum of a two (2) week period with the first voucher to include the period from the date of appointment. [See this Order for complete details.] (Signed by Judge Denise L. Cote on 11/18/2013); See attached for attorneys and defendants.(bw) (Entered: 04/16/2014) |
| 04/18/2014 | 902 | SEALED DOCUMENT placed in vault. (nm) (Entered: 04/18/2014) |
| 04/18/2014 | 903 | SEALED DOCUMENT placed in vault. (nm) (Entered: 04/18/2014) |
| 05/19/2014 | 918 | SEALED DOCUMENT placed in vault. (mps) (Entered: 05/19/2014) |
| 06/03/2014 | 924 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/03/2014) |
| 06/10/2014 | 928 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/10/2014) |
| 06/10/2014 | 929 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/10/2014) |
| 06/10/2014 | 930 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/10/2014) |
| 06/10/2014 | 932 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/10/2014) |
| 06/10/2014 | 933 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/10/2014) |
| 06/10/2014 | 935 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/11/2014) |
| 06/10/2014 | 936 | SEALED DOCUMENT placed in vault. (rz) (Entered: 06/11/2014) |
| 06/10/2014 | 937 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/11/2014) |
| 06/10/2014 | 938 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/11/2014) |
| 06/10/2014 | 939 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/11/2014) |
| 06/18/2014 | 944 | SEALED DOCUMENT placed in vault. (nm) (Entered: 06/19/2014) |
| 06/26/2014 | 951 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/26/2014) |
| 07/28/2014 | 969 | SEALED DOCUMENT placed in vault. (nm) (Entered: 07/28/2014) |
| 09/22/2014 | 981 | SEALED DOCUMENT placed in vault. (rz) (Entered: 09/22/2014) |
| 09/22/2014 | 984 | SEALED DOCUMENT placed in vault. (rz) (Entered: 09/22/2014) |
| 09/22/2014 | 985 | SEALED DOCUMENT placed in vault. (rz) (Entered: 09/22/2014) |
| 09/22/2014 | 986 | SEALED DOCUMENT placed in vault. (rz) (Entered: 09/22/2014) |
| 10/01/2014 | 996 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/01/2014) |
| 10/01/2014 | 997 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/02/2014) |
| 10/09/2014 | 1002 | SEALED DOCUMENT placed in vault. (rz) (Entered: 10/09/2014) |
| 10/16/2014 | 1006 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/16/2014) |
| 10/27/2014 | 1010 | SEALED DOCUMENT placed in vault. (nm) (Entered: 10/28/2014) |
| 11/03/2014 | 1017 | SEALED DOCUMENT placed in vault. (rz) (Entered: 11/03/2014) |
| 11/03/2014 | 1018 | SEALED DOCUMENT placed in vault. (rz) (Entered: 11/03/2014) |

| 11/10/2014 | 1020 | SEALED DOCUMENT placed in vault. (rz) (Entered: 11/10/2014) |
| 11/10/2014 | 1021 | SEALED DOCUMENT placed in vault. (rz) (Entered: 11/10/2014) |
| 12/01/2014 | 1030 | SEALED DOCUMENT placed in vault. (mps) (Entered: 12/01/2014) |
| 12/01/2014 | 1031 | SEALED DOCUMENT placed in vault. (mps) (Entered: 12/01/2014) |
| 01/28/2015 | 1043 | SEALED DOCUMENT placed in vault. (nm) (Entered: 01/28/2015) |
| 01/28/2015 | 1044 | SEALED DOCUMENT placed in vault. (nm) (Entered: 01/28/2015) |
| 02/19/2015 | 1049 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2015) |
| 02/19/2015 | 1050 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2015) |
| 02/19/2015 | 1051 | SEALED DOCUMENT placed in vault. (nm) (Entered: 02/19/2015) |
| 05/18/2015 | 1067 | SEALED DOCUMENT placed in vault. (nm) (Entered: 05/18/2015) |
| 05/18/2015 | 1068 | SEALED DOCUMENT placed in vault. (nm) (Entered: 05/18/2015) |
| 05/18/2015 | 1069 | SEALED DOCUMENT placed in vault. (nm) (Entered: 05/18/2015) |
| 05/18/2015 | 1070 | SEALED DOCUMENT placed in vault. (nm) (Entered: 05/18/2015) |
| 06/10/2015 | 1075 | SEALED DOCUMENT placed in vault. (rz) (Entered: 06/10/2015) |
| 06/24/2015 | 1079 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/24/2015) |
| 06/24/2015 | 1080 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/24/2015) |
| 06/24/2015 | 1081 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/24/2015) |
| 08/07/2015 | 1094 | SEALED DOCUMENT placed in vault. (rz) (Entered: 08/07/2015) |
| 08/07/2015 | 1095 | SEALED DOCUMENT placed in vault. (rz) (Entered: 08/07/2015) |
| 09/28/2015 | 1104 | SEALED DOCUMENT placed in vault. (mps) (Entered: 09/28/2015) |
| 10/08/2015 | 1110 | SEALED DOCUMENT placed in vault. (rz) (Entered: 10/08/2015) |
| 10/08/2015 | 1111 | SEALED DOCUMENT placed in vault. (rz) (Entered: 10/08/2015) |
| 10/13/2015 | 1116 | SEALED DOCUMENT placed in vault. (rz) (Entered: 10/13/2015) |
| 10/26/2015 | 1129 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/26/2015) |
| 10/26/2015 | 1130 | SEALED DOCUMENT placed in vault. (mps) (Entered: 10/26/2015) |
| 11/12/2015 | 1143 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/12/2015) |
| 12/10/2015 | 1155 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/10/2015) |
| 12/23/2015 | 1157 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/23/2015) |
| 12/30/2015 |  | Payment of Special Assessment from Roberto Tacher in the amount of $25.00. Date Received: 12/30/2015. (cla) (Entered: 01/20/2016) |
| 03/03/2016 | 1167 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/03/2016) |

| 03/03/2016 | 1168 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/03/2016) |
| 03/10/2016 | 1172 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/10/2016) |
| 04/13/2016 | | Payment of Special Assessment from Roberto Tacher in the amount of $25.00. Date Received: 4/5/2016. (nm) (Entered: 04/22/2016) |
| 05/31/2016 | 1188 | Judgment Returned Executed for 810 Judgment as to Roberto Tacher on 7/30/2015. Defendant committed to D. Ray James Correctional Facility. (ft) (Entered: 06/29/2016) |
| 06/20/2016 | 1185 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/20/2016) |
| 07/06/2016 | | Payment of Special Assessment from Roberto Tacher in the amount of $27.00. Date Received: 7/6/2016. (aa) (Entered: 04/03/2017) |
| 07/20/2016 | 1189 | SEALED DOCUMENT placed in vault. (mps) (Entered: 07/20/2016) |
| 12/13/2016 | 1205 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/13/2016) |
| 12/13/2016 | 1206 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/13/2016) |
| 12/13/2016 | 1207 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/13/2016) |
| 12/15/2016 | 1208 | SEALED DOCUMENT placed in vault. (mps) (Entered: 12/15/2016) |
| 03/06/2017 | 1217 | SEALED DOCUMENT placed in vault. (rz) (Entered: 03/06/2017) |
| 06/30/2017 | 1237 | SEALED DOCUMENT placed in vault. (rz) (Entered: 06/30/2017) |
| 07/31/2017 | 1242 | SEALED DOCUMENT placed in vault. (rz) (Entered: 08/01/2017) |
| 12/20/2017 | 1251 | SEALED DOCUMENT placed in vault. (rz) (Entered: 12/20/2017) |
| 12/27/2017 | | Payment of Restitution from Roberto Tacher in the amount of $25.00. Date Received: 9/22/2017. (jkr) (Entered: 12/27/2017) |
| 02/25/2019 | 1292 | SEALED DOCUMENT placed in vault. (mhe) (Entered: 02/25/2019) |
| 08/07/2019 | 1298 | PROBATION FORM 64253-EC.cr PETITION as to Roberto Tacher. Petitioning the Court: Transfer of Jurisdiction to the Southern District of Florida. The Court Orders: APPROVED. (Signed by Judge Denise L. Cote on 8/7/2019) Copy Emailed to Elizabeth Cuprill, Supervisory U.S. Probation Officer By Chambers. (gr) (Entered: 08/07/2019) |
| 08/07/2019 | 1299 | PROBATION FORM 22 PETITION as to (11-Cr-1072-10) Roberto Tacher. Petitioning the Court: TRANSFER OF JURISDICTION. THE COURT ORDERS: IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the Southern District of Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.* (Signed by Judge Denise L. Cote on 8/7/2019) [*** NOTE: Await acceptance from USDC-SDFL, no documents sent. ***] (bw) (Entered: 08/07/2019) |